RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0276P (6th Cir.)
File Name: 04a0276p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

UNITED STATES OF AMERICA,
  *Plaintiff-Appellant,*

  *v.*

DENNIS WASHINGTON; and
EBONY BROWN,
  *Defendants-Appellees.*

No. 03-3959

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 03-00009—Algenon L. Marbley, District Judge.

Argued: June 9, 2004

Decided and Filed: August 23, 2004

Before: BOGGS, Chief Judge; MOORE, Circuit Judge;
and QUIST, District Judge.[*]

─────────────

  [*] The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

─────────────

## COUNSEL

**ARGUED:** Kevin W. Kelley, UNITED STATES ATTORNEY, Columbus, Ohio, for Appellant. Lewis E. Williams, Jr., Columbus, Ohio, for Appellees. **ON BRIEF:** Kevin W. Kelley, UNITED STATES ATTORNEY, Columbus, Ohio, for Appellant. Lewis E. Williams, Jr., Columbus, Ohio, John Boyd Binning, Heather R. Zilka, Columbus, Ohio, for Appellees.

  BOGGS, C. J., delivered the opinion of the court, in which QUIST, D. J., joined. MOORE, J. (pp. 13-26), delivered a separate dissenting opinion.

─────────────

## OPINION

─────────────

  BOGGS, Chief Judge. The United States appeals the district court's granting of the defendants' motion to suppress evidence. The defendants, Dennis Washington and Ebony Brown, had been indicted on several counts after police officers executed a search warrant at 3112 Crossgate Road[1] and found narcotics and firearms. Although the officers had obtained a warrant, the defendants filed a motion to suppress arguing that the officer's affidavit, which was the sole basis of the warrant, was insufficient to establish probable cause. The district court agreed and granted the motion to suppress. The United States now appeals, arguing that probable cause did exist or, alternatively, that the good-faith exception of *United States v. Leon*, 468 U.S. 897 (1984) should have been

  [1] In the appellees' brief, counsel stated that this residence belonged to Washington even though the Cadillac registered to that address was registered to Ebony Brown, who was not a resident there, according to counsel. Appellees' Brief at 11-13.

applied. Because we find that the good-faith exception should have been applied, we now reverse.

I

The case began when the Columbus (Ohio) Police Department's Narcotics Bureau planned an undercover "buy" of crack cocaine from an "unwitting," a person who does not know that he is dealing with the police. Detective Michael Johnson, working undercover, arranged a buy from an unwitting on October 1, 2002. Johnson met with the unwitting, who telephoned his narcotics supplier. Johnson and the unwitting then drove to a designated meeting place. Shortly thereafter, a black male driving a blue Cadillac parked next to Johnson's car.[2] The unwitting got out and entered the Cadillac. When the unwitting returned to Johnson's car, he produced a bag of crack cocaine. Johnson recorded the license plate of the Cadillac and later determined that it was registered to a woman named Ebony Brown at 3112 Crossgate Road, Columbus, Ohio. The police subsequently began conducting surveillance on that residence.

On October 5 (four days later), Johnson arranged for another buy with the same unwitting. The unwitting again called his supplier, and thereafter reported that the supplier said that he would be delayed because he was waiting on a ride to pick up his Cadillac in the repair shop. Shortly after this call, the police officers at 3112 Crossgate Road observed a Chevrolet Blazer pick up a black male (later identified as Washington) who emerged from that residence. The officers trailed the Blazer, which eventually dropped the man off at "Columbus Car Audio," where he picked up a blue Cadillac and drove it away. While the unidentified man was driving, the unwitting received a call from the supplier, who instructed

---

[2]This man was later identified as defendant Washington, although the police were unable to identify him before the execution of the warrant at 3112 Crossgate Road.

him to go to a local Burger King. Detective Johnson and the unwitting then drove to Burger King to wait for the supplier. The blue Cadillac (which was being followed) pulled into the Burger King parking lot and the unwitting got out to meet with the driver. Johnson immediately recognized that this was both the same man and the same Cadillac involved in the first "buy" on October 1. After leaving the Cadillac, the unwitting came back and again produced crack cocaine. Johnson was unable to identify the driver of the blue Cadillac at that time, though he subsequently observed the blue Cadillac parked at 3112 Crossgate Road on both October 8 and October 9. As it turned out, the man driving the blue Cadillac was defendant Washington.

Based on these facts, Johnson sought a warrant to search the residence at 3112 Crossgate Road. The basis for the warrant was a four-page affidavit, in which Johnson relayed in narrative form the facts stated above. He added that, based on his experience, individuals involved with drug trafficking commonly keep records, documents, and money close by. In addition, Johnson noted that the Crossgate house had been robbed two months earlier, which was also (in his opinion) "indicative of suspects searching for narcotics and large sums of cash." A state magistrate judge approved the warrant, which was specifically limited to documents and records relating to drug trafficking, but did not authorize a search for drugs themselves.

The police conducted the search on October 11 (the warrant was issued on the 9th), and saw drugs in plain view after they entered the house. Based on these observations, the police obtained a second warrant to search for drugs and drug paraphernalia. Although it is not relevant for the issues in this case, the police found substantial amounts of crack cocaine, a firearm, and large amounts of money at the Crossgate residence.

The grand jury returned a four-count indictment against the defendants, charging them with violations of various drug and

firearm-related offenses. Prior to trial, the defendants moved to suppress all evidence obtained in the search. They made four specific arguments as to why the evidence should be suppressed: (1) the warrant was invalid because the affidavit lacked evidence to establish probable cause, and the good-faith exception did not apply; (2) the police executing the search failed to knock and announce; (3) information in affidavit was too stale; and (4) the evidence from the second search was the "fruit of the poisonous tree."

The district court found that the affidavit was not sufficient to establish probable cause. Specifically, the court found that the evidence did not establish a sufficient nexus between the criminal activity and the residence itself. The court relied heavily on the fact that the police had not identified the suspect (who turned out to be Washington) and had not established where he lived prior to executing the search. Finding that the initial search was invalid, the court did not reach the other arguments, though it also suppressed the evidence of the second search as "tainted fruit." The United States appealed.[3]

## II

The government contends that the district court erred by finding that the affidavit failed to establish probable cause. Alternatively, even if probable cause did not exist, the government argues that the good-faith exception recognized in *United States v. Leon*, 468 U.S. 897 (1984) should have been applied. We consider each argument in turn.

---

[3] In the district court, the government had raised the issue of whether the defendants had standing for Fourth Amendment purposes. The government failed to raise this issue on appeal, and has therefore waived it. *See United States v. Higgins*, 299 F.3d 1039, 1050 (9th Cir. 2002) ("Standing to challenge a search or seizure is a matter of substantive Fourth Amendment law rather than of Article III jurisdiction, meaning that the government can waive the standing defense by not asserting it.") (citing *Illinois v. Rakas*, 439 U.S. 128, 139-40 (1978)).

## A

"When reviewing decisions on motions to suppress, this court will uphold the factual findings of the district court unless clearly erroneous, while legal conclusions are reviewed *de novo.*" *United States v. Weaver*, 99 F.3d 1372, 1376 (6th Cir. 1996). Because there was no hearing and no factual findings, the district court made only legal conclusions. "Where, as in this case, the district court is itself a reviewing court, we owe its conclusions no particular deference. In reviewing a state magistrate's determination of probable cause, this court pays great deference to a magistrate's findings, which should not be set aside unless arbitrarily exercised." *United States v. Leake*, 998 F.2d 1359, 1362-63 (6th Cir. 1993) (internal citations and quotations omitted).

In determining if an affidavit establishes probable cause:

[T]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a *substantial basis* for concluding that probable cause existed.

*United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983) (emphasis added)). "To justify a search, the circumstances must indicate why evidence of illegal activity will be found in a particular place. There must, in other words, be a nexus between the place to be searched and the evidence sought." *Ibid.* (internal citations and quotations omitted). Thus, the critical question here is whether the facts alleged in the affidavit established a sufficient *nexus* between the criminal activity observed and the Crossgate residence.

Under the facts of this case, the existence of probable cause is an extremely close call. However, given our conclusion that the good-faith exception clearly applies, we will assume without deciding that probable cause did not exist.

B

As explained above, the police officers in this case obtained, and relied upon, a warrant issued by a state magistrate judge. Therefore, the goverment argues that *Leon's* good-faith exception should have been applied.

This court has explained that "[c]ourts should not . . . suppress evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *Carpenter*, 360 F.3d at 595 (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). Pursuant to *Leon*, this good-faith exception will not apply in four specific situations: (1) where the affidavit contains information the affiant knows or should have known to be false; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable [or] where the warrant application was supported by [nothing] more than a "bare bones" affidavit[4]; (4) where the warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. *United States v. Van Shutters*, 163 F.3d 331, 337 (6th Cir. 1998). The defendants argued that the second and third situations existed here. The district court concluded that the third applied and thus rejected the government's good-faith-exception argument.

This court reviews the decision of whether to apply the good-faith exception de novo. *Leake*, 998 F.2d at 1366. In

---

[4] A "bare bones" affidavit "states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. Van Shutters*, 163 F.3d 331, 337 (6th Cir. 1998) (quoting *Weaver*, 99 F.3d at 1378).

*Carpenter*, a case decided well after the proceedings below, we recently outlined the appropriate showing that must be made to establish that the officers could have reasonably believed that the affidavit was sufficient to establish probable cause. Under *Carpenter*, this showing is less demanding than the showing necessary to establish probable cause:

> If a lack of a substantial basis also prevented application of the *Leon* objective good faith exception, the exception would be devoid of substance. In fact, *Leon* states that . . . a finding of objective good faith [is inappropriate] when an officer's affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." This is a less demanding showing than the "substantial basis" threshold required to prove the existence of probable cause in the first place.

*Carpenter*, 360 F.3d at 595 (quoting *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002)). *Carpenter* makes it clear that the "so lacking in indicia" test is less demanding than the "substantial basis" test. Thus, it is entirely possible that an affidavit could be insufficient for probable cause but sufficient for "good-faith" reliance.

The standard stated in *Carpenter* is consistent with the purpose and rationale of the exclusionary rule. The Supreme Court has explained that the exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *Leon*, 468 U.S. at 906. Excluding evidence deters constitutional violations by providing incentives for the police to seek warrants before executing a search. Thus, when the officers do in fact obtain a warrant, the purpose of the exclusionary rule has largely been served. While it is true that the police still have a duty to assess the affidavit upon which the warrant was based, we will, under *Carpenter*, exclude evidence in these situations only when the affidavit is "so lacking in

indicia of probable cause as to render official belief in its existence entirely unreasonable." *Carpenter*, 360 F.3d at 595.

There have been several recent cases, all of which involved questions about the nexus between criminal activity and places, where this court has found that probable cause did not exist, but that the good-faith exception should apply. *United States v. Carpenter*, 360 F.3d 591 (6th Cir. 2004) (en banc); *United States v. Van Shutters*, 163 F.3d 331 (6th Cir. 1998); *United States v. Schultz*, 14 F.3d 1093 (6th Cir. 1994); *United States v. Savoca*, 761 F.2d 292 (6th Cir. 1985).

For example, in *Carpenter*, this court explained, "[w]e [have] previously found *Leon* applicable in cases where we determined that the affidavit contained a minimally sufficient nexus between the illegal activity and the place to be searched to support an officer's good-faith belief in the warrant's validity, even if the information provided [did not] establish probable cause." 360 F.3d at 596. In *Carpenter*, police helicopter surveillance had observed a marijuana patch near a residence and a beaten path extending from the house to the plants. This court found that the evidence submitted by the police failed to provide a sufficient nexus to establish probable cause, but still found that *Leon* applied because "the affidavit was not totally lacking in facts connecting the residence to the marijuana patches." *Ibid*. We added, "[t]hese facts . . . were too vague to provide a substantial basis for the determination of probable cause. But these facts . . . were not so vague as to be conclusory or meaningless." *Ibid*.

A case more factually similar to the one before us can be found in *United States v. Schultz*, 14 F.3d 1093 (6th Cir. 1994). In *Schultz*, a police officer arrested an individual for drug possession, and that individual then informed the officer that a man named Schultz was his source for drugs. The officer investigated further and found that some of the informant's information was correct. For example, they traced some phone records (calls to Jamaica) back to an apartment where Schultz had been parking his car. The

officer also traced the phone number used by the informant to purchase drugs back to a woman in whose car Schultz had once received a traffic ticket. The police officer also discovered that Schultz had a safe deposit box at the bank. Based largely on the evidence above, the officer sought a warrant to search the safe deposit box. 14 F.3d at 1096.

In assessing probable cause, this court explained: "In his affidavit . . . , the only connection [the officer] made was that, 'Based on his training and experience, [he] believed . . . that it is not uncommon for the records, etc. of such [drug] distribution to be maintained in bank safe deposit boxes.'" *Id*. at 1097. The court found the affidavit to be insufficient: "[The officer] did not have anything more than a guess that contraband or evidence of a crime would be found in the boxes, and therefore the first warrant should not have been issued." *Id*. at 1097-98.

The court went on, however, to find that the good-faith exception applied:

> [We] cannot say that this warrant was "so lacking [in indicia of probable cause]." As previously discussed, [the police officer] certainly had probable cause to believe that Schultz had committed a crime. Moreover, although we have held that his "training and experience" were not sufficient to establish a nexus of probable cause between that crime and the safe deposit boxes, the connection was not so remote as to trip on the "so lacking" hurdle.

*Id*. at 1098.

In this case, even assuming probable cause was not established, it is clear that the affidavit included enough facts with respect to the nexus between the criminal activity and the Crossgate residence to overcome the "so lacking" hurdle. First, Officer Johnson observed two drug deals involving the same man who was driving a car registered to a person at 3112 Crossgate Road. Thus, just like the officer in *Schultz*,

Johnson certainly had probable cause to believe that Washington had committed a crime. Second, Washington (the then-unidentified dealer) emerged from 3112 Crossgate *immediately* prior to conducting the second drug deal on October 5. Third, Washington had told the unwitting that he had to wait for a ride so that he could pick up *his* Cadillac, which was registered to the Crossgate residence. Fourth, the same Cadillac used in both drug deals (and which Washington claimed was his car) was observed at the Crossgate residence on the mornings of October 8 and 9. Finally, the affidavit included a reference to an armed robbery at the Crossgate residence two months earlier, which Johnson stated (based on four and one-half years in the Narcotics Bureau) was indicative of suspects searching for narcotics or cash. These facts might very well be enough to establish probable cause, although we decline to make that holding. At the very least, though, the facts listed above clearly satisfy the "so lacking" standard necessary for *Leon's* good-faith exception to be applied. There was a visible nexus connecting Washington to the house, Washington to the Cadillac, and the Cadillac to the house.

Both the district court and the defendants relied on two cases in which this court declined to apply the good-faith exception where the officers had obtained a warrant with an affidavit. *United States v. Weaver*, 99 F.3d 1372 (6th Cir. 1996) and *United States v. Leake*, 998 F.2d 1359 (6th Cir. 1993). Both of these cases can be easily distinguished. For example, in *Weaver*, the police officer had merely filled in blanks on a boilerplate affidavit. The officer had also relied on a single informant without any corroboration of the informant's allegations. The court found that the search warrant could not have been relied on in good faith under these circumstances. *Weaver*, 99 F.3d at 1375, 1381 ("We believe a reasonably prudent officer would have sought greater corroboration to show probable cause and therefore do not apply the *Leon* good-faith exception on the facts of this case."). Similarly, in *Leake*, a police officer relied on an anonymous informant, who informed the officer that he

smelled marijuana at a residence. 998 F.2d at 1360-61. The officer spent only two hours on two nights observing the house, but failed to observe any evidence of wrongdoing. *Id.* at 1367. In fact, the only corroboration of the informant's tip was that the house matched the informant's general description and that it had a basement. *Id.* at 1361. On the basis of this information, the officer submitted an affidavit and obtained a warrant. The court refused to apply *Leon. Id.* at 1367 ("The limited information provided by the anonymous caller, coupled with the brief limited surveillance by the affiant officer that turned up nothing unusual, was insufficient. [The officer] knew, or should have known, that reliance on the search warrant was ill-advised."). In both *Weaver* and *Leake*, the efforts of the police were far less extensive than the efforts of Officer Johnson and the Columbus police, and could hardly be deemed "good-faith" reliance.

### III

Because we find the good-faith exception should have been applied, we now REVERSE the district court's granting of the defendants' motion to suppress. Because the district court did not pass on the defendants' other bases for the motion to suppress, we decline to consider those arguments at this time.

---

### DISSENT

---

KAREN NELSON MOORE, Circuit Judge, dissenting. The majority upholds a search when the underlying affidavit neither connects a searched residence to any illegal activity nor states that a suspect observed engaging in such illicit activity away from the residence actually lives at the searched residence. Because such a warrant is so lacking in probable cause that no reasonable officer could rely on it in executing the search, I respectfully dissent.

I would affirm the judgment of the district court. There are two issues raised by this appeal: whether the warrant was supported by probable cause, and if not, whether the officers reasonably relied on the warrant in executing the search. Believing that both inquiries should be answered in the negative, I would suppress the evidence uncovered as a consequence of the illegal search of 3112 Crossgate.

## I. THE AFFIDAVIT

In analyzing the legality of the first warranted search and the reasonableness of the officer's reliance on the first warrant, it is helpful to recount the affidavit that Johnson presented to the issuing judge. Detective Johnson's affidavit spoke of an unidentified individual, whom the unwitting called his "supplier" and who responded when the unwitting requested to purchase cocaine. Johnson did not actually see the drug exchange, but on two separate occasions Johnson "observed verbal and physical interaction between the unwitting and the male," Joint Appendix ("J.A.") at 39 (Johnson Aff. I), who was identified by the unwitting as the supplier, that was consistent with a drug sale. Also on two separate occasions, Johnson observed the supplier driving a Cadillac that was registered to Ebony Brown at 3112 Crossgate. Detectives assisting Johnson watched the supplier

leaving the 3112 Crossgate residence on only one occasion, and Johnson saw the Cadillac parked in front of the residence on two consecutive mornings, although he did not see the supplier on those mornings. The affidavit attested to Johnson's belief that "it is very common for narcotics traffickers to conceal their identity by means of having other persons register vehicles that they commonly drive and essentially own." J.A. at 40. The affidavit also discussed how a 2002 police report showed that Brown had been robbed at gunpoint by three individuals who stole a diamond ring and cash, which led Johnson to the conclusion, based on Johnson's "experience and expertise[,] . . . that the robbery . . . is indicative of suspects searching for narcotics and large sums of cash." J.A. at 40. Finally, the affidavit attested to Johnson's belief that in his experience, drug traffickers are likely to keep records and documents of their illicit activities at their residences. J.A. at 41.

The affidavit is notable for what it lacks. It fails to identify the name of the supplier or to provide a detailed description of him. It in no way suggests that any drug trafficking activity was seen transpiring in or near the residence. The affidavit does not state or provide any information implying that the supplier lived or resided at 3112 Crossgate, aside from Johnson's statement that the supplier was seen leaving that location on one lone occasion. Additionally, the affidavit does not indicate that Johnson performed any research to determine whether the supplier, or Brown, lived at or owned 3112 Crossgate.

## II. PROBABLE CAUSE

Based upon the fundamental principles of the law of warranted searches, I cannot conclude that probable cause supported the issuance of the search warrant. The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. The question is whether "given all the circumstances set forth in the affidavit . . . there is a fair

probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1984). In evaluating the issuing magistrate's probable cause determination, we apply a flexible "totality of the circumstances" approach, which permits us to evaluate the particular facts of each case. *Id.* Despite our consideration of a broad range of circumstances that factor into a magistrate's probable cause determination, there are "limits beyond which a magistrate may not venture in issuing a warrant." *Id.* at 239. "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Id.* Because Johnson's affidavit did not establish that Washington owned the 3112 Crossgate residence, which diminished the likelihood that evidence of drug trafficking would be found there, I believe the magistrate erred in its probable cause determination.

Any review of this search must begin with the clear reality that Johnson's affidavit did not mention any illicit activity at the searched residence nor did it present any credible information (from a confidential informant or an unwitting) that drug trafficking occurred there. Unlike other cases in which drug activity was reported near or at a residence, either by surveilling police or an informant, there was no such information provided here. *Cf. United States v. Martin*, 920 F.2d 393, 399 (6th Cir. 1990) (upholding search when narcotics sale occurred near the residence and a confidential informant provided information about drug activity occurring inside the residence); *United States v. Pelham*, 801 F.2d 875, 878 (6th Cir. 1986) ("When a witness has seen evidence in a specific location in the immediate past, and is willing to be named in the affidavit, the 'totality of the circumstances' presents a 'substantial basis' for conducting a search for that evidence."). Johnson's affidavit stated that he observed the supplier meet with the unwitting twice in locations away from the residence, but Johnson never observed drug trafficking behavior at 3112 Crossgate. The supplier's actions may have provided probable cause for an *arrest* warrant, but the proper

determinant of a *search* warrant is whether evidence is likely to be found on the premises to be searched. *See Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978) ("The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought.").

In prior cases, a paucity of details linking a defendant to the named residence and to drug activity at that residence has led us to conclude that probable cause did not support the issued warrants. In *United States v. Helton*, 314 F.3d 812 (6th Cir. 2003), we held that probable cause did not exist when there was no observation of drug activity at a residence and little to no additional proof connecting the residence to drug trafficking. The affidavit in *Helton* attested to three phone calls a month between the searched residence and known drug dealers, a description of the residence, and an assertion that one of the drug dealers stored money with someone other than the defendant somewhere other than the residence. *Id.* at 820-21. After considering other circumstances of "minimal persuasive value," we held that there was little to no probability that the searched residence contained drugs or drug proceeds. *Id.* at 823; *see also United States v. Savoca*, 761 F.2d 292, 295 (6th Cir. 1985) (holding that probable cause did not support search of a motel room where two known bank robbers were observed together, even taking into account the inference that bank robbers tend to conceal evidence in places like hotel rooms, because there was nothing linking the motel room to the particular crime, which had occurred over 2,000 miles away).[1] Similar to the facts in

---

[1] In other cases, which contrary to this factual scenario involved direct observation of illicit activity at a named residence, incomplete details about the activity also led us to suppress evidence. *See United States v. Weaver*, 99 F.3d 1372, 1379 (6th Cir. 1998) (holding that even though a confidential informant provided a tip that drug activity was occurring at a residence, the affidavit did not attest to any "substantive

*Helton*, there was no direct connection between the supposed illegal drug activity observed by Johnson and 3112 Crossgate; the gulf between the two is bridged by Johnson's statement that it is common for drug traffickers to keep business records and journals at their residences.

The affidavit's reliance upon a belief that drug-related materials may be found in the homes of those who sell drugs elsewhere in lieu of articulable observations of drug trafficking behavior at a residence does not per se condemn the magistrate's probable cause determination. In the past, we have held that an observation of drug trafficking away from a dealer's residence *can* provide probable cause to search the alleged dealer's residence. *United States v. Miggins*, 302 F.3d 384, 393-94 (6th Cir. 2002). We have permitted searches of a trafficker's residence when the trafficker is observed dealing drugs elsewhere, despite the attenuated connection between the trafficking and the residence, because an officer's experience that drug dealers often store evidence of their activities at their residences enhances the probability that trafficking-related evidence will be discovered. *Id.*; *see also United States v. Jones*, 159 F.3d 969, 974-75 (6th Cir. 1998) ("[T]he fact that the incidents referred to in the affidavits took place on the premises [(in the driveway of the residence or in the defendant's car)] rather than inside the house does not invalidate the search of the house."); *United States v. Caicedo*, 85 F.3d 1184, 1193 (6th Cir. 1996) (finding probable cause when affidavit attested to officer's experience

---

independent investigative actions to corroborate [the] informant's claims, such as surveillance of the . . . residence for undue traffic or a second controlled purchase made with officers viewing"); *United States v. Leake*, 998 F.2d 1359, 1365 (6th Cir. 1993) (suppressing evidence when anonymous tipster reported personal observation of drug trafficking-type activities at a residence, but the investigating detective did not notice anything out of the ordinary at the residence during his two-night surveillance, and the detective's tracing of vehicles located at the residence did not increase the probability that drugs would be found at the residence).

that "'many drug traffickers utilize their homes to conduct their illegal narcotics trafficking activities'"). Nonetheless, in these types of cases we should be mindful that *Gates*'s "totality of the circumstances" test requires us to eschew firm rules and that evidence may not *always* be likely to be found where a dealer resides. *See United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (en banc) ("As the Court observed in *Gates*, tests and prongs have an unfortunate tendency to develop a life of their own, and tend to draw more attention to their individual characteristics than to the totality of the circumstances.").

We are presented with an altogether different set of circumstances when the affidavit in question fails to demonstrate that the suspect actually owns or lives at the residence. The link between the suspect and the residence is the key support for the inference that a residential search is likely to turn up evidence of illicit drug activity. When that link is missing, it is an impermissible logical leap to assume that evidence will be found at a location where the suspect does not reside. While it makes some logical sense that drug dealers may maintain records and documents at their homes, it is less reasonable that traffickers would keep records and documents in places where they temporarily reside (visiting a friend's house or a motel) or where they are temporarily guests (spending several hours at the home of an acquaintance). It is notable that there is no comparable inference in Johnson's affidavit that drug dealers tend to keep documents and records of their trafficking at any house where police happen to see them, nor would such a presupposition be plausible or supportable absent some direct observation or knowledge of documents kept at a particular location.

Reviewing the warrant in a "practical, common-sense" manner, it is clear that there was a dramatic reduction in the probability that evidence of drug trafficking would have been found at 3112 Crossgate when the affidavit failed to draw the critical link between the supplier's activities outside the residence and the residence itself. *See United States v. Van*

*Shutters*, 163 F.3d 331, 337 n.4 (6th Cir. 1998) (noting that verification that defendant actually lived at the searched residence "should have been included in the affidavit"). Johnson's affidavit stated that his supporting detectives observed the unnamed supplier leaving the 3112 Crossgate address on one single occasion, but the affidavit contains no other information about the supplier's connection to the residence. Nor did the affidavit claim that Brown resided at 3112 Crossgate. At the time he produced the affidavit, Johnson did not know, and consequently did not and could not inform the court, whether the supplier lived at the residence, was an occasional houseguest, or just visited 3112 Crossgate on the morning he was observed leaving the house.

Unlike the affidavits in other cases in which officers have clearly established that a defendant owned the residence to be searched, Johnson's affidavit did not reflect any research into mortgage or phone records, or any other potential proof that Washington lived or resided at 3112 Crossgate. *See Miggins*, 302 F.3d at 388 (affidavit drew link between defendants and searched residence, even though no drug trafficking activity occurred at the residence); *United States v. Watkins*, 179 F.3d 489, 493 (6th Cir. 1999) (affidavit clearly established that residence was owned by defendant); *Caicedo*, 85 F.3d at 1193 (affidavit noted that defendant had lied about his address and the affidavit claimed that defendant's concealment of his true address could indicate that additional evidence would be found at his actual residence); *United States v. Schultz*, 14 F.3d 1093, 1097 (6th Cir. 1994) (upholding search when there were clear links between defendant and searched apartment; the affidavit attested to the fact that the defendant resided in the apartment, and automobiles registered to the defendant were parked at the searched apartment complex); *United States v. Davidson*, 936 F.2d 856, 857-58, 859-60 (6th Cir. 1991) (affidavit attesting to a widespread and thoroughly documented pattern of drug trafficking activity clearly identified that the suspect lived at the searched residence). Furthermore, unlike many of our other decisions in this area, Johnson's affidavit failed even to identify the name of the

individual who was presumed to live at 3112 Crossgate. Not every affidavit and warrant must identify the suspect or name the suspect as the owner of the searched property, but when the only evidence making it probable that illicit materials will be found at a particular residence is the assumption that drug dealers tend to keep drugs, money, guns, and records at their homes, it seems clear that there should be evidence that the trafficker actually owns or resides at the property to be searched. *Cf. United States v. Pinson*, 321 F.3d 558, 564-65 (6th Cir. 2003) (holding that an affidavit does not need to name a dealer or the owner of searched property, but only when a confidential informant actually purchased drugs and witnessed drug trafficking at the searched residence).

Johnson's other ruminations in the affidavit about the supplier's connection to the residence and Brown's connections to the supplier's alleged drug trafficking constitute little more than speculation and fail to sustain the legality of the search. Johnson's observations of the Cadillac outside 3112 Crossgate on two separate mornings did not at all establish that the supplier resided at that address. Nor does Johnson's suggestion that the supplier registered the Cadillac in Brown's name to conceal his identity successfully show that the supplier lived at 3112 Crossgate. Furthermore, Johnson's statement that the theft of a diamond ring and cash from Brown "is indicative of suspects searching for narcotics and large sums of cash," J.A. at 40, is little more than guesswork because the robbery may have occurred for myriad reasons. This speculation is also irrelevant; the robbery incident does nothing to establish that the supplier lived or resided at 3112 Crossgate.

Considering the "totality of the circumstances" — the dearth of observed drug trafficking activity at 3112 Crossgate, the failure of the affidavit to prove that the supplier resided at 3112 Crossgate, the failure of the affidavit to identify the supplier, and the lack of any additional evidence demonstrating a probability that drug evidence would be found at the residence — Johnson's affidavit failed to

establish a fair probability that documents relating to drug trafficking would be discovered at the 3112 Crossgate residence. Therefore, the warrant was not supported by probable cause, and the search cannot be justified on that basis.

## III. THE *LEON* GOOD-FAITH EXCEPTION

The majority errs by concluding that the good-faith exception established in *United States v. Leon*, 468 U.S. 897 (1984), insulates the search from reproach. *Leon* articulated the principle that the exclusionary rule does not operate "to bar admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Van Shutters*, 163 F.3d at 337 (quotations omitted). However, *Leon* will not apply when "it is clear that . . . the officer will have no reasonable grounds for believing that the warrant was properly issued." *Leon*, 468 U.S. at 922-23. The relevant exception to the *Leon* rule provides that "an officer [would not] manifest objective good faith in relying on a warrant based on an affidavit *so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable*." *Id.* at 923 (emphasis added). Thus, the inquiry is whether Johnson's affidavit was so deficient in establishing probable cause to search 3112 Crossgate that "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* n.23.

The application of *Leon* to this precise factual situation — where no criminal activity is observed at the searched residence *and* the affidavit fails: 1) to identify the suspect; and 2) to demonstrate that the suspect lives at the place to be searched — is a novel question for this circuit. In different factual circumstances, we have held that an officer's reliance on a warrant was objectively unreasonable when the warrant failed to make a sufficient connection between a suspect, the suspect's illegal actions, the objects to be seized, and the place to be searched. *See Helton*, 314 F.3d at 825 ("A

reasonable officer knows that evidence of three calls a month to known drug dealers from a house, a description of that house, and an allegation that a drug dealer stores drug proceeds with his brother and his brother's girlfriend (neither of whom live at or are known to visit that house), falls well short of establishing probable cause that the house contains evidence of a crime."); *United States v. Weaver*, 99 F.3d 1372, 1381 (6th Cir. 1998) (holding that "a reasonably prudent officer would have sought greater corroboration to show probable cause" when the affidavit did not indicate a fair probability that a suspect was growing marijuana at a particular residence); *United States v. Leake*, 998 F.2d 1359, 1367 (6th Cir. 1993) (rejecting application of *Leon* because "a two-night, two-hour surveillance simply produced no significant corroboration of the information's claim of marijuana trafficking").

The government unpersuasively suggests that several of our cases mandate an outcome in its favor because those cases apply the good-faith exception "despite the lack of *any* nexus between the criminal activity and the place to be searched." Gov't Br. at 34 (citing *Van Shutters*, 163 F.3d at 337-38; *Schultz*, 14 F.3d at 1098; *Savoca*, 761 F.2d at 298). The government's misreading of these cases explains its overstatement; in the cited cases, an identified suspect and a strong and demonstrable connection between the suspect and the place to be searched served as the nexus between the criminal activity and the search location. For example, in *Van Shutters*, the affiant had personal knowledge of the suspect's criminal enterprises, the affidavit implied that the affiant had observed the suspect in the searched residence or otherwise determined that the suspect frequented the residence, and a search of a different residence owned by the suspect turned up incriminating evidence. *Van Shutters*, 163 F.3d at 334, 337. We ruled that *Leon* preserved the fruits of the search. In *Schultz*, an officer sought a warrant to search a safe-deposit box based upon the intuition that documents and records of drug distribution are often kept in such boxes. *Schultz*, 14 F.3d at 1097. We held that despite the lack of a nexus

between the crime and the safe-deposit boxes, the connection was not so remote as to make *Leon* inapplicable. *Id.* at 1098. In *Schultz*, however, there was a proven nexus between the suspect and the safe-deposit box, a connection missing here. *See also Savoca*, 761 F.2d at 298 (holding that affidavit was not "so lacking in indicia of probable cause" when two known bank robbers were observed staying at the motel room that was searched). By contrast, Johnson's affidavit does not show in any meaningful fashion that the supplier was connected to 3112 Crossgate in a way that would increase the probability that documentary evidence would be discovered there.

The majority's belief that the result here is dictated by *United States v. Carpenter*, 360 F.3d 591 (6th Cir. 2004) (en banc) is no less misplaced. In *Carpenter*, a majority of the en banc court upheld a search under *Leon* when an affidavit stated merely that marijuana was observed near a residence belonging to the defendants and that a road connected the residence to the marijuana. *Id.* at 593. The *Carpenter* majority discussed the applicability of *Leon* in cases when "the affidavit contained a minimally sufficient nexus between the illegal activity and the place to be searched to support an officer's good-faith belief in the warrant's validity." *Id.* at 596. The court concluded that the officers acted reasonably in searching the Carpenters' residence for evidence of marijuana cultivation. Id.

I continue to believe that *Carpenter* was wrongly decided, *id.* at 601-04 (Moore, J., dissenting), but it is the law in this circuit. Nonetheless, its holding does not guide this outcome because of the differences between the two cases. The "minimally sufficient" nexus of physical proximity between the drugs and the residence that was the focal point in *Carpenter* is not evident in this case. The majority in *Carpenter* felt that an observation of marijuana growing "near" the residence (about 900 feet away), as opposed to "in," "abutting," or "within the curtilage of" the residence, justified the officers' reasonable reliance upon the warrant

even though the proximity of the marijuana was too remote to give probable cause to search. By contrast, Johnson did not observe drug activity anywhere near 3112 Crossgate; the purported trafficking occurred several miles from the home. As a result, Johnson, unlike the officer in *Carpenter*, could not rely on the propinquity of the drugs to the residence as an indicator that drugs were likely to be discovered at the home. Instead, Johnson had to rely on the extremely tenuous link between the supplier and the residence and the presumption that a trafficker will keep drug-related materials at their residence. Relatedly, the warrant in *Carpenter* strongly implied that the defendants owned the residence, but it did not need to because the observation of the marijuana plants "near" the residence provided the requisite nexus that made belief in the warrant's validity reasonable. Dissimilarly, Johnson's warrant made no mention of the supplier's connection to 3112 Crossgate, but such a connection was absolutely necessary given that the supplier, as opposed to some observation of physical proximity, served as the primary link to the residence.

Any reasonable officer would have known that probable cause did not support the warrant because the affidavit's discussion of only a sparse and speculative connection between the supplier and 3112 Crossgate highlighted its clear deficiencies. As justification for the document search, Johnson relied on his intuition and experience that those involved in trafficking often keep records of their illegal activities where they live. Yet, the affidavit did not identify the supplier or attempt to show that the supplier resided at the 3112 Crossgate, both of which constitute fatal omissions. Any reasonable officer would have known that it is illegal to search a residence when it is not clear that the suspect lives or resides there or conducts illegal drug activity there, because there is not a high probability that the desired evidence will be uncovered at that location. A reasonable officer would have realized that, without more surveillance or research, he or she could not determine whether the supplier owned the residence at 3112 Crossgate, was an occasional houseguest,

or simply stayed at 3112 Crossgate the one time he was observed leaving the house. Under such circumstances, a reasonable officer would recognize the diminished probability of finding documentary evidence at 3112 Crossgate.

Two additional facts reinforce the unreasonableness of Johnson's reliance upon the warrant. First, Johnson's affidavit stated that he had agreed to make a controlled buy of a kilogram of cocaine, which he suspected would be provided by the supplier. Johnson submitted the first affidavit and obtained the first warrant before the buy occurred, and the abandonment of the controlled buy suggests that the officers acted with unnecessary haste when more investigation could have been conducted. Second, it is impossible to ignore the ease with which Johnson could have uncovered the supplier's connection to 3112 Crossgate. A simple public records inquiry, further research into the name on the utilities accounts registered at the address, or additional surveillance would have provided clear evidence of whether the supplier actually lived at 3112 Crossgate. The relative prolixity of the affadavit (4 pages, single-spaced) does not remedy its failure to provide easily acquired and vital information linking the supplier to the residence. *See*, *e.g.*, *Helton*, 314 F.3d at 816, 824 (showing that length of affidavit is not dispositive by rejecting application of *Leon* even though affidavit was twenty-seven pages long). It was unreasonable for Johnson to rely on an affidavit lacking this critical information.

## IV. CONCLUSION

In sum, I dissent because the majority's holding further erodes the fundamental protections against unreasonable governmental intrusions promised by the warrant provisions of the Fourth Amendment. By declaring that the officers relied reasonably on the warrant when the underlying affidavit drew no connection between the illegal activity and the place to be searched *or* between the suspect and the place to be searched, the majority vitiates the prophylaxis of the search warrant requirement. In the triangulation between

trafficking activity, a suspect, and a place to be searched, we have previously permitted searches even though all three points cannot be connected, but the majority unfortunately and unnecessarily debilitates the Fourth Amendment by validating a search in which neither the trafficking activity nor the suspect are tied to the location to be searched.