**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0174n.06

**Case No. 18-2350**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| *Plaintiff-Appellee,* | ) | Mar 26, 2020 |
| | ) | DEBORAH S. HUNT, Clerk |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| ROBERTO CLEMENTE GOVEA, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| *Defendant-Appellant.* | ) | |

O P I N I O N

BEFORE:     COLE, Chief Judge; BOGGS and SUTTON, Circuit Judges.

COLE, Chief Judge.  Roberto Govea pleaded guilty to possession with intent to distribute methamphetamine, heroin, and cocaine after police discovered these drugs in his home upon the execution of a search warrant.  On appeal, Govea argues that the district court erred in denying his motion to suppress the evidence seized from his residence.  We affirm.

## I. BACKGROUND

In November 2017, an officer at the Kent County Sheriff's Department applied for a warrant to search Roberto Govea's residence in Grand Rapids, Michigan.  The officer's sworn affidavit filed in support of this application explained that the department had been investigating the sale of methamphetamine from the residence of another suspect, Ashton Belcher.  In their investigation, the police relied on a confidential informant ("CI") who described having purchased

narcotics from Belcher over a hundred times during the year prior to the warrant application. The CI told police that during most of these purchases, Govea was with Belcher and had carried a gun on multiple occasions.

During the month prior to the warrant application, the police used this CI—whom they believed to be reliable and credible—to engage in three controlled buys of methamphetamine from Belcher. Govea was with Belcher during all three controlled buys, and the CI observed Govea with a handgun in his waistband during one of the buys.

During the last of the controlled buys, which was within 48 hours of the warrant application, Belcher had a phone call with the CI in which Belcher identified a meeting spot for their methamphetamine transaction. While one officer was with the CI, a detective watched Belcher's home. The detective saw two suspects leave Belcher's backyard in a 2017 Nissan. The detective followed the Nissan to Govea's residence. Govea "went inside for a few minutes and then exited." (Search Warrant Aff., R. 23-1, PageID 51.) "The Nissan [then] responded directly to the informant and Ashton Belcher completed the meth transaction." (*Id.*) The CI identified Govea as the driver of the Nissan that transported Belcher to the location of the controlled buy, and police records indicated that Govea had recently received a speeding ticket while driving that Nissan about a month before the warrant application. In the officer's affidavit, he stated that "[t]hrough [his] training and experience" he had "learned that narcotic dealers have stash houses where narcotics, cash from narcotics proceeds, and guns are stored," and "stash houses are frequented before or after narcotic transactions." (*Id.* at PageID 52.)

A state judge issued the search warrant in accordance with the officer's request. The warrant authorized a search of Govea's home and seizure of items evidencing narcotics trafficking, including any quantities of methamphetamine or any other controlled substance. Upon execution

of the warrant at Govea's home, police found 40 grams of methamphetamine, 28 grams of heroin, 8 grams of cocaine, 20 suboxone strips, 3 digital scales, and drug packaging.

On January 30, 2018, a grand jury indicted Govea for possession with intent to distribute methamphetamine (Count I), possession with intent to distribute heroin (Count II), and possession with intent to distribute cocaine (Count III). Govea filed a motion to suppress, arguing that the evidence seized from his residence should be suppressed because the affidavit in support of the search warrant application did not establish probable cause, and the good-faith exception to the exclusionary rule under *United States v. Leon*, 468 U.S. 897 (1984), did not apply. The district court denied Govea's motion to suppress after holding a non-evidentiary hearing. The district court held that the *Leon* good-faith exception applied.

Govea then conditionally pleaded guilty to the three charges listed in the indictment. In his plea agreement, Govea expressly "reserve[d] the right, on appeal from the judgment, to seek review of the adverse determination of his motion to suppress evidence." (Plea Agreement, R. 30, PageID 82.) The district court sentenced Govea to 84 months' imprisonment and entered judgment on November 6, 2018. Govea filed a timely notice of appeal.

## II. ANALYSIS

Under the good-faith exception to the exclusionary rule announced by the Supreme Court in *United States v. Leon,* 468 U.S. 897 (1984), "[c]ourts should not . . . suppress 'evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant.'" *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004) (en banc) (quoting *Leon,* 468 U.S. at 922). "*Leon*'s exception is predicated on the idea that the purpose of the exclusionary rule, which is to deter police misconduct, will not be served by excluding evidence seized by an officer acting in good faith." *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005).

A court of appeals "reviews the decision of whether to apply the good-faith exception de novo." *United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004). Where the good-faith exception to the exclusionary rule applies, a court need not reach the question of whether the search warrant was supported by probable cause. *See, e.g.*, *id.* at 240; *United States v. Gilbert*, No. 19-3456, 2020 WL 1160904, at \*2 (6th Cir. Mar. 11, 2020).

The *Leon* good-faith exception is inapplicable where any one of the following situations is present:

> (1) where the affidavit contains information the affiant knows or should have known to be false; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable [or] where the warrant application was supported by [nothing] more than a "bare bones" affidavit; [or] (4) where the warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid.

*Washington*, 380 F.3d at 241.

Govea argues that the third scenario is present here: Officers' belief that the affidavit provided probable cause was entirely unreasonable. Under this third scenario, the court "does not examine the subjective states of mind of [the particular] law enforcement officers [conducting this particular search]," but instead asks "whether the faceless, nameless 'reasonably well trained officer' in the field, upon looking at this warrant, would have realized" that probable cause was not established for "the search described." *United States v. Hodson*, 543 F.3d 286, 293 (6th Cir. 2008) (quoting *United States v. Helton*, 314 F.3d 812, 824 (6th Cir. 2003)).

The good-faith exception clearly applies in a situation where the affidavit "tie[s] the alleged drug activity to [the defendant's] residence," is "based upon multiple events," and "relie[s] on verifiable facts, not conclusory assertions, unsubstantiated hearsay, or a purely subjective belief that [the defendant] was involved in drug trafficking." *Gilbert*, 2020 WL 1160904, at \*5. Those

circumstances are present here. The affidavit detailed several closely monitored controlled buys, a detective's direct observation of a brief stop at Govea's residence just prior to one of these buys, and a reliable CI's description of Govea's longstanding ties to an ongoing drug-trafficking operation.

Govea argues that the affidavit did not provide a sufficient nexus between the drug activity and his residence. We disagree. All that is needed for the good-faith exception to apply is for "the affidavit [to] contain[] a minimally sufficient nexus between the illegal activity and the place to be searched[.]" *Carpenter*, 360 F.3d at 596. Even a "modicum of evidence, however slight, to connect the criminal activity described in the affidavit to the place to be searched" will suffice for the good-faith exception to apply. *United States v. Laughton*, 409 F.3d 744, 749 (6th Cir. 2005). Govea's brief stop at his home—immediately before driving to the scene of a controlled buy and immediately after driving to his home from the home of the seller in the controlled buy, with the seller as a passenger—connected the drug trafficking operation to Govea's residence and provided a basis to believe that his home was a stash house. The *Leon* good-faith exception therefore applies.

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Roberto Govea's motion to suppress.