NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0423n.06

No. 23-2040

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Oct 24, 2024

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff - Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| DAREESE DAVON HEWLETT, | ) ) | OPINION |
| Defendant - Appellant. | ) ) | |

Before: SUTTON, Chief Judge; READLER and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. Dareese Davon Hewlett pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). He now argues that his conviction should be vacated for two reasons. First, he contends that the district court erred in denying his motion to suppress the firearm underlying his conviction. Second, he argues that § 922(g) is unconstitutional as applied to him under the Second Amendment standard articulated in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), an issue he raises for the first time on appeal. But the police who seized the firearm relied in good faith on a search warrant, and Hewlett cannot show plain error as to his Second Amendment challenge. We affirm Hewlett's conviction.

## BACKGROUND

On May 22, 2022, Hewlett attended a memorial event at Smith-Ryerson Park in Muskegon, Michigan, for a man who had been shot and killed a year earlier. According to witnesses, Hewlett got into an altercation during the event and fired a gun at two men. As Hewlett left the scene,

another man shot at him, striking him twice in the back. Hewlett drove himself to the hospital to receive treatment for his gunshot wounds.

Police later located Hewlett's vehicle in the hospital parking lot and conducted an inventory search. Inside the vehicle, they found three cell phones. Police obtained warrants to view the contents of the phones. On one of the phones, they discovered a conversation in which Hewlett referenced a "glock"—a type of firearm—and a "switch," a device that modifies a pistol so that it can fire automatically. A couple of days later, on May 24, 2022, police executed a search warrant at Hewlett's home in Muskegon. They discovered a pistol in Hewlett's residence and a second pistol in a vehicle driven by Hewlett's wife. Hewlett had been convicted of over a dozen felonies, including for being a felon in possession of a firearm and for distributing or possessing with intent to distribute drugs, but he was not charged with being a felon in possession after this first search.

A month later, during an unrelated investigation, police seized a Glock pistol, modified with a switch, while executing a search warrant for a room at the Baymont Inn in Muskegon. The Glock turned out to be Hewlett's.

The search of the hotel room stemmed from an investigation started on June 16, 2022, when officers received a report that a sixteen-year-old boy, W.S., had threatened his cousin while brandishing a firearm. Police could not find W.S. at his home, but their surveillance suggested he was staying in a room at the Baymont Inn. On June 21, police applied for a warrant to search the hotel room for W.S., his electronic devices, firearms, and firearms-related evidence. The warrant application was based on an affidavit by Detective Devin Hopkins, who stated that police had observed W.S. exit and enter the hotel room twice and had confirmed that he was inside at the time they filed the application. Detective Hopkins also explained that, based on his "training and experience," individuals involved in "gun related crimes" carry guns on their person or store them

"within their vehicle and . . . lodging." Search Warrant Aff., R. 26-1, PageID 77. A search of the hotel room that day ultimately led to the discovery of Hewlett's Glock.

After finding the Glock at the hotel, police continued investigating Hewlett. On July 6, after arranging for controlled buys of fentanyl from Hewlett at his home, officers executed a second search warrant of the home. There, they discovered fentanyl, money used during the fentanyl purchases, and another pistol.

Hewlett was arrested and ultimately charged with four offenses: three counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), stemming from Hewlett's possession of the Glock from the hotel and two other firearms found at Hewlett's property, and one count of possession of a machine gun, in violation of 18 U.S.C. § 922(o), for the switch attached to the Glock.

Hewlett moved the district court to suppress the Glock seized at the hotel as well as other evidence seized during the searches of his vehicle and residence. The district court denied Hewlett's motions to suppress. As relevant here, the district court held that the search of the hotel room was supported by probable cause and that, even if probable cause were lacking, the police had relied on the warrant in good faith.

Ultimately, Hewlett pleaded guilty to a single count of being a felon in possession of a firearm, relating to the Glock seized in the hotel room. Under the plea agreement, Hewlett agreed to give up his right to pursue in the district court or on appeal "any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed, except as to the denial of Defendant's Motions to Suppress." Plea Agreement, R. 50, PageID 180.

Hewlett timely appealed.

## ANALYSIS

### I.      Hewlett's Motion to Suppress

When reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law de novo. *United States v. Richards*, 659 F.3d 527, 536 (6th Cir. 2011). On appeal, Hewlett challenges the district court's denial of his motions to suppress only as to the Glock seized at the Baymont Inn. Hewlett argues that the Glock should have been suppressed because the warrant authorizing the search lacked probable cause.[1]

The Fourth Amendment requires probable cause for a search warrant to issue. "An issuing judge may find probable cause to issue a search warrant when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008) (quoting *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005)). To justify a search, the circumstances must indicate a "nexus between the place to be searched and the evidence sought"—that is, reason to believe that evidence of illegal activity will be found in a particular place. *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (citation omitted).

Hewlett argues that the search warrant was deficient because the affidavit filed with the warrant application did not establish the required "nexus" between the hotel room and either W.S. or any firearms in his possession. First, Hewlett contends that the search warrant affidavit lacked

---

[1] To be able to challenge the search of the Baymont Inn hotel room, Hewlett must ordinarily show that he has Fourth Amendment standing—that is, that he had a reasonable expectation of privacy in the place searched. *See Minnesota v. Carter*, 525 U.S. 83, 88 (1998). Here, however, the government expressly conceded in the district court that Hewlett has standing. *See* Govt. Resp. to Def. Mot. to Supp., R. 32, PageID 110 n.3 ("The United States does not dispute Defendant's standing to challenge any of these searches."). The government has accordingly waived the issue, and we may not consider it. *See United States v. Leon*, 762 F.3d 509, 527–28 (6th Cir. 2014) (holding that the government may waive or forfeit Fourth Amendment standing and that, when a party waives the issue, the court may not consider it even on plain error).

adequate facts from which to conclude that W.S. was residing at or had rented the hotel room. Second, Hewlett argues that the affidavit provided an insufficient basis to conclude that weapons were in the hotel room.

Hewlett's arguments fail without us even considering probable cause. Assuming without deciding that the affidavit failed to establish a sufficient nexus between the items sought and the room to be searched, police were entitled to rely on the search warrant in good faith. *See United States v. Washington*, 380 F.3d 236, 240 (6th Cir. 2024) (explaining that because the good-faith exception clearly applied, the court would assume without deciding that probable cause did not exist). Courts do not suppress evidence that officers obtained in "objectively reasonable reliance" on a search warrant, irrespective of whether the warrant is "subsequently invalidated." *United States v. Leon*, 468 U.S. 897, 922 (1984).

To be sure, the good-faith exception is "not boundless." *United States v. Van Shutters*, 163 F.3d 331, 337 (6th Cir. 1998). The Supreme Court has recognized several circumstances that might warrant suppression even when officers relied on a warrant, including when the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 610–11 (1975) (Powell, J., concurring in part)). Relying on that line of cases, Hewlett contends that the good-faith exception should not apply because the search warrant was so defective that a "reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 922 n.23.

We disagree. This court has explained that when a defendant challenges a search warrant on the basis that it did not provide the required "nexus between the residence and the illegal activity," the good-faith exception applies so long as "the affidavit contained a minimally

sufficient nexus between the illegal activity and the place to be searched to support an officer's good-faith belief in the warrant's validity, even if the information provided was not enough to establish probable cause." *Carpenter*, 360 F.3d at 595–96.

Here, the affidavit supplied this "minimally sufficient nexus." *Id.* at 596. Detective Hopkins provided a substantial basis for believing that W.S. was staying in and would be found in the hotel room at the Baymont Inn: officers surveilling W.S. had observed him coming and going from the room and knew that he was inside the room when they filed the warrant application. And as to the nexus between firearms and the hotel room, Detective Hopkins explained that he knew from experience that W.S. would likely keep the firearms on his person or in his residence. Under this court's precedents, those facts are enough for a minimally sufficient nexus. This court has applied the good-faith exception even when the sole link between the place searched and the criminal activity was an officer's "guess" based on his "training and experience." *United States v. Schultz*, 14 F.3d 1093, 1097–98 (6th Cir. 1994) (citation omitted); *see also Van Shutters*, 163 F.3d at 336–38.

Thus, even assuming without deciding that the search warrant lacked probable cause, Detective Hopkins's affidavit was not so deficient as to preclude application of the good-faith exception. We accordingly affirm the district court's denial of Hewlett's motion to suppress the evidence seized at the Baymont Inn.

## II.     Hewlett's Second Amendment Challenge

Hewlett next contends that his conviction should be vacated because the felon-in-possession statute, 18 U.S.C. § 922(g)(1), violates the Second Amendment as applied to him under the Supreme Court's decision in *Bruen*. Because Hewlett did not challenge the constitutionality of § 922(g)(1) in the district court, we review this claim for plain error. *See United States v. Johnson*,

95 F.4th 404, 415 (6th Cir. 2024). To show plain error, Hewlett must "establish: (1) an error, (2) that was 'plain,' (3) that affected 'substantial rights,' and (4) that seriously impacted 'the fairness, integrity or public reputation of judicial proceedings.'" *Id.* at 416 (quoting *Greer v. United States*, 593 U.S. 503, 507–08 (2021)).

As an initial matter, the government argues that we may not address Hewlett's Second Amendment argument because Hewlett waived his right to challenge his conviction on that basis in his plea agreement. We need not address the government's waiver argument. Hewlett's as-applied challenge to § 922(g)(1) fails at any rate because he cannot show plain error. An error is plain only if it is "clear or obvious, rather than subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009). Considering Hewlett's substantial criminal record, it is not at all "clear or obvious" that § 922(g)(1) is unconstitutional as applied to him. Recently, this court addressed § 922(g)(1)'s constitutionality in light of the Supreme Court's recent decisions in *Bruen*, 597 U.S. 1, and *United States v. Rahimi*, 144 S. Ct. 1889 (2024). *See United States v. Williams*, 113 F.4th 637 (6th Cir. 2024). The court held that § 922(g)(1) is constitutional both on its face and "as applied to dangerous people." *Id.* at 643, 657, 662–63. *Williams* elaborated that a defendant who wishes to raise an as-applied challenge to § 922(g)(1) must make "an individualized showing that he himself is not actually dangerous," considering his individual characteristics and "entire criminal record." *Id.* at 663. And, of particular significance here, *Williams* said that "certain categories of past convictions," including violent crimes and crimes involving drug trafficking, are "highly probative of dangerousness." *Id.* at 658–59. While *Williams* did not involve drug crimes, *see id.* at 662, the case's reasoning suggests that the constitutionality of § 922(g)(1) as applied to Hewlett—whose criminal record reflects multiple prior felonies involving drug trafficking and violence—is, at a minimum, "subject to reasonable dispute," *Puckett*, 556 U.S. at 135; *see also*

*United States v. Parham*, No. 24-5025, 2024 WL 4511825, at *5 (6th Cir. Oct. 17, 2024) (explaining that a defendant with previous violent felonies is "exactly the type of individual our history and tradition allow Congress to disarm"). Hewlett therefore cannot meet his burden of showing a clear or obvious error. Hewlett's as-applied challenge to § 922(g)(1) accordingly fails.

## CONCLUSION

We affirm.