**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Gregory HOWARD, Defendant–
Appellant.**

No. 14–6326.

United States Court of Appeals,
Sixth Circuit.

Nov. 24, 2015.

BEFORE: SILER, CLAY, and GIBBONS, Circuit Judges.

CLAY, Circuit Judge.

Defendant Gregory Howard appeals from the March 26, 2014, order entered by the district court denying his motion to suppress. Defendant's motion argued that the warrant to search his residence was not supported by probable cause. After the motion was denied, Defendant pleaded guilty to one count of possession with intent to distribute Oxycodone, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1). The plea agreement reserved Defendant's right to appeal the motion to suppress. Defendant now exercises that right.

For the reasons set forth below, we **AFFIRM** the district court's order denying Defendant's motion to suppress.

## BACKGROUND

On February 6, 2013, a Kentucky court issued a warrant to search Defendant Gregory Howard's residence. The affidavit supporting the warrant, written by Detective Willie Skeens of the Kentucky State Police's UNITE drug task force, stated in pertinent part:

On the 5th day of Feb. 2013, at approximately 5:45 p.m., affiant received information from:

Shawn Compton that Brian Howard was currently conducting narcotics deliveries for a variety of addicts in Magoffin Co[.] Shawn Compton states that Brian Howard is receiving the narcotics from Greg Howard a relative of Brian Howard at the location described herein and the photo attached hereto.

The witness states that Brian Howard does not have a vehicle and usually borrows the purchasers vehicle and drives to the residence described herein to pick up the pills for the addicts while leaving the addicts at Brians home located on coon creek.

On 02–05–2013 myself and Det Adams met the witness at an undisclosed location in Magoffin co and conducted a control buy from Brian Howard.

The witness stated they arrived at the residence of Brian Howard on Coon Creek and Brian Howard took the witnesses money and vehicle and began pulling out of the driveway and stopped[.] Brian exited the vehicle and told the witness that Greg Howard had just contacted him and told him to wait 15 minutes before leaving coon creek to come get the pills.

Durring [sic] the buy the witness stated that Brian Howard went to the residence of Greg Howard described herein to purchase a quantity of Oxycodone pills for the witness. Detectives also personally observed the witnesses vehi-

cle leaving the residence described herein.

The witness stated that when Brian returned with the pills that was purchased that Brian Howard told the witness that he went to purchase the pills from Greg Howard and further told the witness that Greg Howard was currently laying low because he was scared of getting caught by Law Enforcement.

(R. 26–2, Search Warrant & Affidavit, Pg ID # 55.) On the following page, the affidavit states:

Acting on the information received, affiant conducted the following independent investigation:

UNITE and KSP have been receiving tips about Greg Howard and his Oxycodone trafficking activities that has been directly linked to Howards Grocery located in Magoffin County[.] Unite detectives have made controlled buys from the store from individuals associated with Greg Howard.

(*Id.* at 56.)

Upon execution of the search warrant, officers found Defendant attempting to dispose of pills in a bathroom sink. The officers recovered a portion of the pills, which were later determined to be Oxycodone. The officers also recovered $5,172 in currency from a bag inside the residence, which included $340 in buy money used during the controlled buy between Brian Howard and Shawn Compton.

Defendant was indicted on November 7, 2013, for conspiracy and intent to distribute oxycodone pills, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846. On February 18, 2014, Defendant filed a motion to suppress evidence seized from the search of his home pursuant to the warrant. The district court permitted

briefing on the motion and held a telephonic status conference on March 3, 2014, at which the court determined that a hearing on the motion would not be necessary. On March 26, 2014, the court issued an order denying Defendant's motion. *United States v. Howard*, 2014 WL 1253123, at *4 (E.D.Ky.2014).

In its order, the district court held that Shawn Compton "was a named informant and his statements are therefore generally considered to be reliable even without independent corroboration to establish his credibility." *Id.* at *2. The court further held that, even if Compton was not presumptively reliable, the detectives' observations during the controlled buy constituted sufficient corroboration to establish probable cause. *Id.* at *3. The court noted, however, that the detectives' independent investigation of Howards Grocery was "of limited value." *Id.* Finally, the court rejected Defendant's argument that the warrant lacked sufficient particularity. *Id.*[1]

After the court denied his motion to suppress, Defendant entered a conditional guilty plea that reserved the right to appeal the district court's ruling on the motion to suppress. On October 15, 2014, the court accepted Defendant's plea, and he was sentenced below the guidelines to time served and placed on supervised release. Defendant timely appealed.

## DISCUSSION

### I. Standard of Review

In considering the denial of a motion to suppress, we review the district court's findings of fact for clear error and legal conclusions *de novo*. *United States v. Smith*, 594 F.3d 530, 535 (6th Cir.2010). "[T]he district court's application of the

---

1. Defendant does not raise this argument on appeal.

law to the facts, such as a finding of probable cause, is [also] reviewed de novo." *United States v. Pasquarille*, 20 F.3d 682, 685 (6th Cir.1994). "Where a district court denies a motion to suppress, this Court considers the evidence in the light most favorable to the government." *United States v. Hinojosa*, 606 F.3d 875, 880 (6th Cir.2010) (internal brackets and quotation marks omitted) (quoting *United States v. Carter*, 378 F.3d 584, 587 (6th Cir.2004) (en banc)).

## II. Analysis

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ." U.S. Const. amend. IV. In deciding whether the affidavit supporting a warrant establishes probable cause, magistrates must consider "the totality of the circumstances." *United States v. Allen*, 211 F.3d 970, 972 (6th Cir.2000) (en banc) (citing *Illinois v. Gates*, 462 U.S. 213, 230–31, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)); *see also United States v. Davidson*, 936 F.2d 856, 859 (6th Cir.1991) ("Probable cause exists when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place."). In turn, "[t]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis' for concluding that probable cause existed." *United States v. Gunter*, 551 F.3d 472, 479 (6th Cir.2009) (quoting *Gates*, 462 U.S. at 238–39, 103 S.Ct. 2317).

A magistrate may rely on hearsay evidence provided by an informant when considering whether probable cause exists to issue a warrant. *United States v. Helton*, 314 F.3d 812, 819 (6th Cir.2003). In so doing, the magistrate should

> make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Gates*, 462 U.S. at 238, 103 S.Ct. 2317.

Importantly, these indicia of an informant's credibility—veracity and basis of knowledge—provide only a framework for determining whether an informant's tip creates probable cause. *See Helton*, 314 F.3d at 819–20. In other words, the "veracity or reliability and . . . basis of knowledge" of an informant should not be viewed "as entirely separate and independent requirements to be rigidly exacted in every case." *Gates*, 462 U.S. at 230, 233, 103 S.Ct. 2317 (internal quotation marks omitted). Even so, "these factors remain highly relevant in the . . . analysis under the 'totality of the circumstances.'" *United States v. Smith*, 182 F.3d 473, 477 (6th Cir.1999) (quoting *Gates*, 462 U.S. at 230, 103 S.Ct. 2317).

In *Gates*, the Supreme Court provided examples of how the veracity/basis of knowledge framework might play out:

> If, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip. . . . Likewise, if an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge unnecessary. *Adams v. Williams*, [407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)]. Conversely, even if we entertain some doubt as to an informant's motives, his explicit and detailed description of al-

leged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case.

*Id.* at 233–34, 103 S.Ct. 2317 (emphasizing the necessity of a "balanced assessment of the relative weights of all the various indicia of reliability"). And regardless how an informant fares in this framework, "corroboration through other sources of information" can provide "a substantial basis for crediting" an informant's tip. *Id.* at 244–45, 103 S.Ct. 2317.

Here, the facts contained in the affidavit bolstered Compton's veracity and, to a lesser extent, his basis of knowledge. In addition, the controlled buy described in the affidavit corroborated Compton's tip. For these reasons, we conclude that under the totality of the circumstances, the magistrate had a substantial basis for concluding probable cause existed, and that the district court's order denying Defendant's motion to suppress should therefore be affirmed.

### A. Veracity or Reliability

The "veracity or reliability" factor of the *Gates* framework concerns the individual informant's credibility as such. *See Gates,* 462 U.S. at 233–34, 103 S.Ct. 2317. Generally, "[a]n affidavit ... must contain a statement about some of the underlying circumstances indicating the informant was credible or that his information was reliable." *Smith,* 182 F.3d at 477. What police know about an individual informant plays a significant role in evaluation of her veracity. Tips from anonymous persons, for example, "demand more stringent scrutiny of their veracity, reliability, and basis of knowledge than reports from confidential informants." *Helton,* 314 F.3d at 820; *see also United States v. Johnson,* 364 F.3d 1185, 1190 (10th Cir.2004) ("A tipster who refuses to identify himself may simply be making up the story, perhaps trying to use the police to harass another citizen.").

The Supreme Court illustrated this principle in *Florida v. J.L.,* 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). In that case, an anonymous caller informed police "that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." *Id.* at 268, 120 S.Ct. 1375. Police discovered a person matching this description at the indicated location, but did not see a firearm. *Id.* Even so, officers frisked the suspect and discovered a gun in his pocket. *Id.* The Court held "that an anonymous tip lacking indicia of reliability ... does not justify a stop and frisk whenever and however it alleges the illegal possession of a firearm." *Id.* at 274, 120 S.Ct. 1375. In so holding, the Court observed that "[u]nlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated ... an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity." *Id.* at 270, 120 S.Ct. 1375 (internal quotation marks and citations omitted).

*Florida v. J.L.* thus suggests that where an informant is known to police, that informant's tip is entitled to more weight because (1) officers can assess the informant's reputation or otherwise evaluate her credibility, and (2) the threat of prosecution for filing a false statement is circumstantial evidence of veracity. *See id.; see also United States v. May,* 399 F.3d 817, 824–25 (6th Cir.2005) ("The statements of an informant ... whose identity was known to the police and who would be subject to prosecution for making a false report, are thus entitled to far greater weight than those of an anonymous source.").

This Circuit has placed particular emphasis on the "informant's reputation" fac-

tor discussed in *Florida v. J.L.* In *United States v. Allen*, 211 F.3d 970 (6th Cir.2000) (en banc), for example, this Court held that where an informant "to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, in the recent past," such a statement may, on its own, be sufficient to establish probable cause. *Id.* at 976; *see also Smith*, 182 F.3d at 483 ("[I]f the prior track record of an informant adequately substantiates his credibility, other indicia of reliability are not necessarily required."). *But see Allen*, 211 F.3d at 986–87 (Clay, J., dissenting) (arguing that a warrant "based simply upon a generalized assertion regarding the reliability of the informant" is not supported by probable cause).

We have also accorded considerable weight to the threat of prosecution that a named informant faces for filing a false police report. *See, e.g., United States v. Hodge*, 714 F.3d 380, 384–85 (6th Cir.2013) ("Statements from a source named in a warrant application ... are generally sufficient to establish probable cause without further corroboration because the legal consequences of lying to law enforcement officials tend to ensure reliability."); *United States v. Williams*, 544 F.3d 683, 690 (6th Cir.2008) ("the warrant here named the informants, and named informants, unlike confidential informants, require little corroboration"). *But see United States v. McCraven*, 401 F.3d 693, 698 (6th Cir. 2005) ("An informant's willingness to be named is not necessarily a better predictor of reliability, in our view, than an informant's having a track record of providing reliable information."). Relying on *Hodge* and *Williams*, the district court in this case concluded, "Compton was a named informant and his statements are ... generally considered to be reliable even without independent corroboration to establish

his credibility." *Howard*, 2014 WL 1253123, at *2.

We note, however, that the cases cited by the district court involved named informant tips supported by other indicia of credibility. In *Hodge*, an informant named in the warrant affidavit stated that he witnessed "the manufacture of methamphetamine, several firearms, and a bomb" at the defendant's residence. 714 F.3d at 382. In addition to being named, however, the informant's tip contained significant details: the informant personally saw persons inside the target residence "shaking 'two sports drinks bottles'" and described the bottles' peculiar contents, which officers recognized as characteristic of a "one pot style methamphetamine cook." *Id.* Furthermore, upon receiving the informant's tip, officers "immediately set to work corroborating" his story, *id.*, and found substantial corroborating evidence in methamphetamine ingredient purchase logs, police records, and "silent observer" tips. *Id.* at 385.

Similarly, in *Williams*, not only was the informant named; officers "corroborated the information [the informant] provided through multiple sources, including [two cooperating witnesses], who correctly identified [defendant's] block." 544 F.3d at 690. Also, the investigating officer's "own observations outside [defendant's] residence substantiated [the informant's] statements." *Id.*

Indeed, all our named informant cases share this common thread—affidavits containing an informant's name *plus* other indicia of reliability. *See, e.g., United States v. Kinison*, 710 F.3d 678, 683 (6th Cir.2013) (holding probable cause existed based on informant's "credibility as a named informant *along with* [her] decidedly intimate relationship" with the suspect, as revealed in a text-message log provided by the informant (emphasis added)); *Unit-*

ed States v. Combs, 369 F.3d 925, 938 (6th Cir.2004) (noting informant "was known to the police ... [had] informed them that he had recently traded guns with [defendant] for OxyContin, and his statements corroborated other information the police already had"); United States v. Miller, 314 F.3d 265, 269–70 (6th Cir.2002) (noting named informant spoke to police on two occasions over the telephone, drove with police to the location of the residence at which the informant alleged illegal activity, and provided a detailed description of the defendant's marijuana growing operation); United States v. Pelham, 801 F.2d 875, 878 (6th Cir.1986) ("When a witness has seen evidence in a specific location in the immediate past, and is willing to be named in the affidavit, the 'totality of the circumstances' presents a 'substantial basis' for conducting a search for that evidence.").

Read in this light, our cases are more in step with the Supreme Court's admonition that courts evaluating probable cause must take into account the "totality of the circumstances," Gates, 462 U.S. at 230, 103 S.Ct. 2317 (emphasis added), rather than implement bright-line rules. See, e.g., Florida v. Harris, —— U.S. ——, 133 S.Ct. 1050, 1055, 185 L.Ed.2d 61 (2013) (observing that when evaluating probable cause, "[w]e have rejected rigid rules, bright-line

tests, and mechanistic inquiries in favor of a more flexible, all-things-considered approach"); see also United States v. Spach, 518 F.2d 866, 870 (7th Cir.1975) ("That a person is named is not alone sufficient grounds on which to credit an informer, but it is one factor which may be weighed in determining the sufficiency of an affidavit."). Certainly, we would run afoul of this admonition—and, indeed, the Fourth Amendment—were we to declare that police can invade the sanctity of the home based on a warrant containing only an informant's name, full stop.[2]

With these principles in mind, we turn to the case at hand. Notably, the affidavit provided the magistrate with no information regarding Compton's history as an informant. Even so, that Compton faced the threat of prosecution for filing a false police report bolstered his veracity. See K.R.S. § 519.040 (establishing criminal penalties for "falsely reporting an incident").

Defendant's principal argument on appeal is that the typical presumption of veracity for named informants ought not apply to Compton because he did not subject himself to liability for filing a false report. Specifically, Defendant argues that because Compton's account of what

---

**2.** Practical considerations also caution against giving dispositive weight to an informant's tip merely by virtue of her being named in the affidavit. Some classes of informants, named or otherwise, are not renowned for their veracity. See, e.g., Jaben v. United States, 381 U.S. 214, 224, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965) (noting that the credibility of narcotics informants "may often be suspect"); 2 Wayne R. LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 3.4(a) (5th ed.2012) (collecting cases and discussing at length the relative veracity of citizen—and criminal—informants). Moreover, not all informants are aware that officers will use their statements in a warrant. See Hodge, 714 F.3d at 385 (noting but declining to discuss the fact

that the at-issue "affidavit does not acknowledge that [the informant] was aware his statements would be used in a warrant application"). And not all informants are aware that false statements might lead to prosecution. See, e.g., United States v. Braden, 248 Fed. Appx. 700, 706 (6th Cir.2007) (Moore, J., dissenting) ("a statement against penal interest can indicate reliability only where the informant understands his statement as a threat against his penal interest and recognizes the potential for prosecution."). Finally, even assuming an informant is aware of the above, the threat of perjury charges is not always an effective guarantor of veracity, as many trial attorneys will surely attest.

happened during the controlled buy was based on Brian Howard's hearsay and not Compton's own personal knowledge, Compton could not be charged with "knowingly" filing a false report because he had no real "knowledge." We reject this argument for two reasons. First, as a factual matter, the controlled buy was preceded by Compton's original tip to police about Defendant and Brian Howard's drug dealing operation. Though Defendant is correct that Compton's knowledge of Brian Howard's actions during the controlled buy were largely based on Brian's own hearsay, Defendant cannot attack the original tip in the same manner.

Second, Defendant provides no authority for the proposition that prosecution for falsely reporting an incident under K.R.S. § 519.040 is impossible where a report is based on hearsay. That section of the Kentucky Penal Code provides:

(1) A person is guilty of falsely reporting an incident when he:

. . .

(b) Reports to law enforcement authorities an offense or incident within their official concern knowing that it did not occur; or

(c) Furnishes law enforcement authorities with information allegedly relating to an offense or incident within their official concern when he knows he has no information relating to such offense or incident; or

(d) Knowingly gives false information to any law enforcement officer with intent to implicate another. . . .

K.R.S. § 519.040. A hearsay statement—especially one concerning the declarant's own illegal activity—almost certainly constitutes an "incident" or "information" that can both "relate to an offense" or implicate the declarant in illegal activity. It follows that fabricating such a hearsay statement would violate the statute. *See id.*

More importantly, even assuming Compton's tip did not subject him to the threat of criminal prosecution, the affidavit provided additional indicia of Compton's veracity: as with the informant in *Miller*, Compton worked with police to corroborate his own tip. *See Miller*, 314 F.3d at 270. Indeed, Compton went a step further than the informant in *Miller*. In that case, the informant merely drove to the defendant's house with police to confirm its location and appearance. *Id.* Here, Compton participated in a controlled buy, perhaps putting himself at significant risk had his relationship with police been discovered. That Compton so substantively participated in the investigation lent him some measure of credibility.

For these reasons, we conclude that the indicia of Compton's veracity contained in the affidavit lent his tip considerable weight in the totality of the circumstances analysis.

### B. Basis of Knowledge

The "basis of knowledge" factor of the *Gates* framework "refers to the particular means by which an informant obtained his information." *Smith*, 182 F.3d at 477 (citing *Gates*, 462 U.S. at 228, 103 S.Ct. 2317). Generally speaking,

[t]here must be sufficient indication of the underlying circumstances from which an informant could reasonably conclude illegal activity is afoot. . . . In assessing an informant's "basis of knowledge," the degree of detail contained in a tip may be used to infer whether the informant had a reliable basis for making his statements. . . . An explicit and detailed description of the alleged wrongdoing allows a magistrate to "reasonably infer that the informant had gained his information in a reliable way."

*Id.* (quoting *Spinelli v. United States*, 393 U.S. 410, 416, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)); *see also Gates*, 462 U.S. at 233–34, 103 S.Ct. 2317 (suggesting an informant's "explicit and detailed description of alleged wrongdoing" is relevant to basis of knowledge analysis). In *Smith*, for example, an informant told police that he personally saw the defendant, who was a felon, carrying two specific guns at a specific address within 48 hours before the warrant was issued. 182 F.3d at 480. The Court held that the "informant's basis of knowledge was firsthand, and there was no·need for the informant to speculate further about whether a crime was being committed because mere gun possession by a felon constitutes a felony." *Id.*

Conversely, in *Helton*, the Court evaluated the statements of an anonymous tipster regarding a house being used for illegal activity. *Helton*, 314 F.3d at 816. The Court held that the affidavit did not sufficiently demonstrate the tipster's basis of knowledge where: the tipster's knowledge was based on hearsay and, in some cases, double hearsay (making the affiant's knowledge two or three degrees removed); the tipster's reports were two months old and therefore stale; and the tipster failed to provide basic details regarding his or her visit to the defendant's residence, such as which rooms were visited or where the evidence of criminal activity was spotted. *Id.* at 822. These deficiencies, combined with a lack of corroboration on the part of police, meant that the tip itself failed to make up for the anonymous informant's inherent lack of credibility. *See id.* at 823.

The affidavit in this case states that, according to Compton:

> Brian Howard was currently conducting narcotics deliveries for a variety of addicts in Magoffin Co ... Brian Howard is receiving narcotics from [Defendant] a relative of Brian Howard at [Defendant's residence].
>
> [Compton] states that Brian Howard does not have a vehicle and usually borrows the purchasers vehicle and drivers to [Defendant's residence] to pick up the pills for the addicts while leaving the addicts at Brians home....

(R. 26–2, Pg ID # 55.)

These statements do little to establish Compton's basis of knowledge. The affidavit does not state how Compton knows any of this; the credibility gained from professed firsthand knowledge is absent. *See Smith*, 182 F.3d at 480. *But see Allen*, 211 F.3d at 975 ("[An] affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added."). Thus, the only means of judging Compton's basis of knowledge came from the detail provided in his tip.

Unfortunately, Compton's tip was largely devoid of detail. The first paragraph, especially, contains little that would substantiate a particularized basis of knowledge: the use of a middleman and stash house in the sale of drugs is not unique. The names and relationship of the suspects likewise suggest only a basic familiarity with the operation. The second paragraph does a bit more work: that Brian Howard would leave "addicts" at his house and use their cars to drive to Defendant's house is, we assume, an unusual way to operate as a middleman. Compton's inclusion of these details regarding Brian Howard's *modus operandi* thus suggested some particularized basis of knowledge. And, as discussed below, these details provided investigators with the opportunity to corroborate Compton's tip.

In all, however, Compton's tip as described in the affidavit was largely devoid of detail, and the affidavit failed to state

how Compton came to his knowledge of Defendant's operation. For those reasons, Compton's basis of knowledge did little to bolster the credibility of his tip. *See Helton*, 314 F.3d at 822.

## C. Corroboration

Where the veracity and basis of knowledge of an informant have been thoroughly established, corroboration of the tip may not be necessary. *See Allen*, 211 F.3d at 976 (holding "[c]orroboration is not a necessity" where confidential informant's reliability was well established and his tip was based on "direct personal observation of criminal activity."); *Williams*, 544 F.3d at 690 ("named informants, unlike confidential informants, require little corroboration."). What an informant and her tip lack in intrinsic indicia of credibility, however, police must make up for in corroboration. *See, e.g., United States v. Woosley*, 361 F.3d 924, 927 (6th Cir.2004) ("an affidavit that supplies little information concerning an informant's reliability may support a finding of probable cause, under the totality of the circumstances, if it includes sufficient corroborating information"); *United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir.2000) ("information received from an informant whose reliability is not established may be sufficient to create probable cause when there is some independent corroboration by the police of the informant's information").

Here, in addition to the indicia of reliability discussed above, the affidavit described two possible instances of corroboration: first, the controlled buy; second, the independent investigation into drug sales at a grocery store associated with Defendant. Each is addressed in turn.

### i. The Controlled Buy

When an informant's statement contains a prediction about criminal behavior, such a prediction provides officers with an opportunity to "test the informant's knowledge or credibility." *Florida v. J.L.*, 529 U.S. at 271, 120 S.Ct. 1375. For example, in *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), the police received an anonymous tip stating that a woman was in possession of cocaine and predicting that "she would leave an apartment building at a specified time, get into a car matching a particular description, and drive to a named motel." *Florida v. J.L.*, 529 U.S. at 270, 120 S.Ct. 1375 (summarizing *White*, 496 U.S. at 327, 110 S.Ct. 2412). The Court held that when police observed the behavior as predicted, the anonymous tipster's credibility was bolstered enough to establish reasonable suspicion to make a *Terry* stop. *White*, 496 U.S. at 332, 110 S.Ct. 2412. Similarly, in *Gates*, police received an anonymous letter describing in some detail the logistics of the defendants' drug trafficking scheme. 462 U.S. at 225, 103 S.Ct. 2317. The Court held that because officers corroborated multiple details in the letter, such as the defendants' peculiar itinerary, "[t]he judge, in deciding to issue the warrant, could have determined that the *modus operandi* of the [defendants] had been substantially corroborated." *Id.* at 226, 103 S.Ct. 2317.

In this case, detectives attempted to corroborate Compton's tip by staging a controlled buy. As Defendant notes, however, the controlled buy had little corroborative value; this is so for two reasons. First, what happened during the controlled buy was relayed almost entirely by Compton himself: no undercover officers participated in the buy, Compton did not wear a wire, and there was limited surveillance. Thus, to the extent discussion of the controlled buy in the affidavit was an attempt to bolster Compton's otherwise unknown credibility, the magistrate was forced to

rely on Compton to verify his own veracity. Furthermore, the details of Brian Howard's movements during the encounter—including the fact that he procured the drugs from Defendant's residence—were twice removed from Detective Skeens: because Compton did not accompany Brian Howard to Defendant's residence, "all Shawn Compton knew [about that part of the buy] was what Brian Howard told him." (Def.'s Br. at 14.)

Even so, the affidavit contains one important fact: during the controlled buy, detectives witnessed Compton's car leaving Defendant's residence. This fact was important in two respects. First, it substantiated Compton's prediction that his own vehicle would be used to pick up the drugs. Second, it linked the alleged criminal activity to Defendant's residence.

Certainly, the detectives' observation would have gone further in corroborating Compton's tip if, for example, Brian Howard had been seen behind the wheel of the vehicle as it left Defendant's residence. We reiterate, however, that an "affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *Allen,* 211 F.3d at 975. And, importantly, the controlled buy does not stand on its own; rather, it serves to bolster Compton's credibility as an informant. "It is enough, for purposes of assessing probable cause, that 'corroboration through other sources of information reduced the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the [informant's] hearsay.'" *Gates,* 462 U.S. at 244–45, 103 S.Ct. 2317 (quoting *Jones v. United States,* 362 U.S. 257, 269, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)). By substantiating one detail of Compton's story—a detail, moreover, unique to Brian Howard's *modus operandi*—the controlled buy reduced the chance that Compton's tip

was a "reckless or prevaricating tale." *Id.; see also Gunter,* 551 F.3d at 480–81 (holding corroboration of named informant's statements, some of which included suspect's hearsay, enhanced informant's reliability).

For this reason, we find unavailing Defendant's assertion that the controlled buy was of no value because "Compton had no personal knowledge as to what occurred inside [Defendant's] residence." (Def.'s Br. at 18.) The magistrate that issued the warrant did not need corroboration of what happened inside Defendant's residence; the magistrate needed only enough information to verify Compton's credibility as an informant. *United States v. McCraven,* 401 F.3d 693, 697 (6th Cir.2005) ("As long as the issuing judge can conclude independently that the informant is reliable, an affidavit based on the informant's tip will support a finding based on the informant's tip will support a finding of probable cause."). The controlled buy provided a basis for doing just that.

For these reasons, we conclude that the investigator's corroboration of Compton's tip lent that tip additional credibility.

### ii. The Independent Investigation

The affidavit in this case also contained facts about an "independent investigation" conducted by investigators. This section of the affidavit states that police:

> [had] been receiving tips about [Defendant] and his Oxycodone trafficking activities that has been directly linked to Howard's Grocery located in Magoffin County ... detectives have made controlled buys from the store from individuals associated with [Defendant].

(R. 26–2, Pg ID # 56.) The United States argues that this independent investigation lends weight to the affidavit because it suggests that Defendant is a drug dealer, and the magistrate was allowed to infer

"that evidence of wrongdoing will be found in a drug dealer's residence." (Pet'r's Br. at 8 (citing *United States v. McPhearson*, 469 F.3d 518, 524–25 (6th Cir.2006)).) The district court, on the other hand, held that this evidence was "of limited value." *Howard*, 2014 WL 1253123, at *3. "While it adds reason to believe that [Defendant] is engaged in drug trafficking, the fact that these other controlled buys were at the grocery store greatly diminishes their value in assessing the search warrant targeting the residence." *Id.*

We agree with the district court's assessment. The affidavit supporting a warrant "must suggest 'that there is reasonable cause to believe that the specific "things" to be searched for and seized are located on the property to which entry is sought' and not merely 'that the owner of property is suspected of crime.'" *McPhearson*, 469 F.3d at 524 (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978)); *see also United States v. Gunter*, 266 Fed. Appx. 415, 418 (6th Cir.2008) ("The mere fact that someone is a drug dealer is not alone sufficient to establish probable cause to search their home."). And while some cases suggest that

> observation of drug trafficking outside of the dealer's home can provide probable cause to search the dealer's house[,] ... [n]one of these cases ... supports the proposition that the defendant's status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home.

*United States v. Frazier*, 423 F.3d 526, 532–33 (6th Cir.2005) (collecting cases).

In this case, the independent investigation did little to confirm, on its own, that drugs would be found in Defendant's residence. The investigation's sole value, therefore, was in corroborating Compton's tip that Defendant was a drug deal-

er. But, as the district court noted, the investigation provides little in this respect: it suggests only that drugs were purchased at a grocery store associated with Defendant from persons associated with Defendant. Such information is several inferences removed from corroborating Compton's tip that Defendant was dealing drugs out of his home through Brian Howard.

For these reasons, we conclude that the independent investigation described in the warrant is worth little weight in the totality of the circumstances analysis.

## CONCLUSION

Notwithstanding the fact that named informants possess some inherent credibility by virtue of the consequences of lying to law enforcement, *see Hodge*, 714 F.3d at 384–85, that Compton was named in the at-issue affidavit was not, by itself, enough to establish probable cause. But the affidavit relied on more than the threat of prosecution to establish Compton's credibility: it stated that he worked with police to conduct a controlled buy; his tip suggested at least a limited basis of knowledge by providing details about Brian Howard's *modus operandi*; and investigators personally substantiated one of those details during the course of the controlled buy. Given these facts, we conclude that the totality of the circumstances "provide[d] the magistrate with a substantial basis for determining the existence of probable cause." *Gates*, 462 U.S. at 239, 103 S.Ct. 2317.

Nevertheless, our holding should not be taken as an invitation for investigators to draft—or for executing officers to rely upon—similarly threadbare affidavits. We are well aware that affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation." *United States v. Ventresca*, 380 U.S. 102, 108, 85

S.Ct. 741, 13 L.Ed.2d 684 (1965). Even so, we are confident that no significant harm would have befallen UNITE's investigation of Defendant had a few self-evidently important details been added to the affidavit—for example, whether investigators actually recovered any controlled substances from Compton after the controlled buy. And as we have previously warned, "[p]olice should be aware that failure to corroborate all that can easily be corroborated … risk[s] the loss, at trial or on appeal, of what has been gained with effort in the field." *Allen*, 211 F.3d at 976. Had investigators taken a few simple precautions when preparing the warrant to search Defendant's home, this case might not be before us.

For the foregoing reasons, we **AFFIRM** the district court's order denying Defendant's motion to suppress.