NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0285n.06

Case No. 23-5989

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 28, 2024
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff - Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE WESTERN DISTRICT OF |
| | ) | TENNESSEE |
| MELVIN WOODALL, | ) | OPINION |
| Defendant - Appellant. | ) | |

Before: CLAY, THAPAR, and MATHIS, Circuit Judges.

THAPAR, J., delivered the opinion of the court in which MATHIS, J., joined. CLAY, J. (pp. 6–15), delivered a separate dissenting opinion.

THAPAR, Circuit Judge. Memphis police executed a search warrant at Melvin Woodall's house, where they found narcotics and a handgun. The United States then indicted Woodall for drug and firearm offenses. Woodall moved to suppress evidence from the house, arguing there was no probable cause connecting the house to his suspected crimes. He also sought to suppress a statement he allegedly made to detectives following the search, arguing it was fruit of the poisonous tree. After the district court denied his motion, Woodall pled guilty but reserved the right to appeal the suppression ruling. He now appeals, and we affirm.

I.

Police generally need a warrant to search someone's house. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). And to obtain a warrant, police need probable cause: "a fair probability

that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); U.S. Const. amend. IV. The Supreme Court has told us that courts must exclude evidence that police obtain in violation of these rules. *Elkins v. United States*, 364 U.S. 206, 209 (1960). But the exclusionary rule applies only if a defendant has a privacy interest in the house that was searched—i.e., the defendant lived there. *United States v. Salvucci*, 448 U.S. 83, 95 (1980). Additionally, there's a carveout for when police rely on a warrant in good faith. *United States v. Leon*, 468 U.S. 897, 909, 922 (1984). Since the officers here relied on the warrant in good faith, we need not decide whether there was probable cause. *See, e.g.*, *id.* at 905 (finding good faith without resolving probable cause); *United States v. Washington*, 380 F.3d 236, 240–44 (6th Cir. 2004) (same).

The good-faith exception applies unless (1) the warrant was facially deficient, (2) the affidavit supporting the warrant was knowingly or recklessly false, (3) the magistrate judge failed to act in a neutral and detached manner, or (4) the warrant lacked probable cause to such an extent that it was unreasonable for officers to rely on it. *United States v. Helton*, 314 F.3d 812, 819, 824 (6th Cir. 2003). Woodall doesn't dispute the first three. So the only question is whether the officers acted unreasonably in relying on the warrant.

That bar is low: a warrant affidavit needs to show only a "modicum of evidence, however slight, between the criminal activity at issue and the place to be searched." *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017) (cleaned up). Here, the affidavit provided the following details:

- A confidential informant told police that Woodall was storing and dealing large quantities of drugs in the house;
- The confidential informant bought fentanyl from Woodall at a monitored, controlled buy within five days of the warrant application;

- Police observed Woodall leave the house wearing a backpack, spend a short time with others, and return. Based on their experience and training, police determined this behavior suggested drug sales;

- Woodall would repeatedly exit his house with a backpack on, walk to a nearby pond, and return two to three minutes later—consistent with the behavior of drug dealers who store contraband "in fields, ponds, [and] woods in order to conceal from law enforcement," R. 63, Pg. ID 449; and

- Woodall had past convictions for narcotics-distribution crimes.

This suffices for good faith. First, police corroborated the informant's tip that Woodall dealt drugs and stored them at the house. Police arranged a controlled buy at which Woodall sold the informant drugs. And they observed behavior supporting the informant's claim that Woodall stored drugs at the house.

Second, the affiant-officer's experience and training suggested Woodall was transporting drugs from the house to drug deals and outdoor storage locations. This led the officer to conclude the house would contain tools of the trade, such as drug ledgers, address books, computers, and cell phones. *See United States v. Reed*, 993 F.3d 441, 447 (6th Cir. 2021).

Third, police observed Woodall deal drugs. And they saw Woodall leave the house wearing a backpack, meet with people for a short time, and then return. This court has previously upheld a probable-cause finding when "police watched the suspect leave a home, undertake a drug deal, and return there." *Id.* at 448 (citing *United States v. Ellison*, 632 F.3d 347, 349 (6th Cir. 2011)). So such evidence suffices for good faith.

To be sure, the affidavit suggests Woodall stored at least some of his drugs at a nearby pond. But that makes no difference here. Even if Woodall stored his drugs off-site, police could reasonably infer that the house contained evidence of his crimes, like the backpack, a scale, or a drug ledger. *Reed*, 993 F.3d at 447.

Fourth, binding circuit precedent holds that "[w]hen an officer identifies recent, reliable evidence of drug activity, that activity can provide a reason to believe that drugs or other evidence of crime [will] be found in the suspect's home." *Id.* at 448–49 (internal quotations omitted). And the Supreme Court has told us that when an officer's search complies with "binding appellate precedent," the good-faith exception applies. *Davis v. United States*, 564 U.S. 229, 232 (2011). Here, police arranged a controlled buy within five days of the search. The recency and reliability of Woodall's drug activity thus provided a good-faith basis for police to search the house.

## II.

The dissent raises several counterarguments, but none affects the outcome here. First, the dissent points out that police directly corroborated only the first part of the informant's tip: that Woodall dealt drugs. To be sure, the affidavit presented only circumstantial corroboration for the second part of the tip: that Woodall stored evidence of the crime in the house. But police don't need to corroborate every part of a tip before obtaining a warrant. *See, e.g.*, *Gates*, 462 U.S. at 242–43 (noting that when officers verified part of an informant's tip, there were "reasonable grounds to believe that the remaining, unverified bit of information . . . was likewise true," even when informant "gave no indication of the basis for his information" (internal quotation omitted)); *id.* at 244 ("Because an informant is right about some things, he is more probably right about other facts." (internal quotation omitted)).

The dissent also takes issue with our assumption that the house in question was Woodall's. But we didn't assume this. Both the record and Woodall's brief indicate the house was his. Moreover, Woodall never disputes this fact in his brief. And if he had tried to argue the house wasn't his, he'd have needed to "establish that [he] had a legitimate expectation of privacy there"

in order to have standing. *Salvucci*, 448 U.S. at 95. He hasn't attempted to make this showing. So regardless of whether the house is his, the evidence is admissible.

Lastly, the dissent highlights that *the affidavit* didn't indicate that Woodall lived at the house. Again, Woodall never raised this argument in his brief. For good reason: the first page of the affidavit described the house as "the premises . . . of . . . Melvin Woodall." R. 63, Pg. ID 448. From this, police could reasonably infer Woodall lived at the house.

\* \* \*

The police had a good-faith basis to rely on the warrant. Since they did so, Woodall's statement is also admissible.[1]

We affirm.

---

[1] In the attenuation portion of his brief, Woodall makes a passing claim that his statement was involuntary. That's because, he argues, his statement came after he was confronted with evidence seized during the search. But on appeal, Woodall doesn't argue that the statement was either un-*Mirandized* or the product of "coercive police conduct." *See Colorado v. Connelly*, 479 U.S. 157, 164 (1986). He therefore fails to show involuntariness.

**CLAY, Circuit Judge, dissenting.** Police invaded a Memphis house based on a tip that Melvin Woodall was dealing drugs at that address. But, contrary to the majority's contentions, the search warrant affidavit never indicated that Woodall lived there. Had the majority accurately recounted the facts in the affidavit, it would have correctly held that there was no probable cause to support the affidavit, and that the good faith exception cannot rescue this search. I therefore respectfully dissent.

The Fourth Amendment requires a warrant supported by probable cause to search someone's home. Probable cause, in turn, requires "a nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004). And when evaluating whether an affidavit based on a confidential informant's ("CI") tip furnishes such probable cause, courts are to consider "the (1) veracity; (2) reliability; and (3) basis of knowledge of the tipster or informant" as part of the totality of the circumstances inquiry. *United States v. Gunter*, 551 F.3d 472, 479 (6th Cir. 2009). Where an affidavit fails to set out a CI's reliability or basis of knowledge, corroboration of the tip by law enforcement is required. *United States v. Woosley*, 361 F.3d 924, 927 (6th Cir. 2004).

By these standards, the affidavit in this case lacked probable cause.[1] The affidavit notes that a "reliable confidential informant" stated that "fentanyl is being stored and sold out of 2247 Oldfield Dr." by Woodall. R. 63, Page ID #449. The affidavit also stated that the CI had purchased fentanyl from Woodall, but notably did not state that the purchase occurred in the residence. *Id.* Further, the affidavit stated that Detective Baker "conducted a controlled buy of fentanyl from

---

[1] The majority disregards our precedent and affirms the district court's denial of Woodall's motion to suppress under the good faith exception, without ever reaching a conclusion on probable cause. *Cf. United States v. Reed*, 993 F.3d 441, 451 (6th Cir. 2021) ("*Leon*'s exception applies only when an affidavit falls short of probable cause.").

Melvin Woodall," but, again, did not state whether that controlled buy occurred in or near the residence. *Id.* Instead, the affidavit states that officers arranged for a controlled by "at a specific location," but did not specify where that location was or its relation to the residence. *Id.* Officer Baker later testified at the suppression hearing that the controlled buy occurred outside the residence, but that information does not appear in the affidavit and the magistrate judge would have no way of knowing whether the controlled buy happened close to the residence. *Cf. United States v. Frazier*, 423 F.3d 526, 535 (6th Cir. 2005) (noting that a judge's probable cause determination is confined to the four corners of the affidavit). The four corners of the affidavit do not establish that drug-dealing occurred in the residence, and do not include the required indicia that evidence of criminal activity can be found there. *Cf. United States v. Helton*, 35 F.4th 511, 521 (6th Cir. 2022) (defendant's presence somewhere near his home with a baggie of unidentified residue failed to connect his *home* with drug trafficking); *Brown*, 828 F.3d at 382 (no sufficient nexus where "the search warrant affidavit contained no evidence that [the defendant] distributed narcotics from his home, that he used it to store narcotics, or that any suspicious activity had taken place there").

The confidential tip was also lacking in the required veracity, reliability, and basis of knowledge. *Illinois v. Gates*, 462 U.S. 213, 233 (1983). There is no information in the affidavit that establishes the CI's basis of knowledge as to the presence of drugs and drug-dealing in the Oldfield Drive residence. This Court has found similar affidavits lacking in this regard where, as in this case, the affidavit does not assert that the informant has been in the place to be searched or bought drugs at the place to be searched. *See, e.g., United States v. Higgins*, 557 F.3d 381, 390 (6th Cir. 2009); *Brown*, 828 F.3d 382–83. And while the affidavit notes that the confidential informant has participated in controlled buys in the past, the affidavit fails to set forth further

information about the informant's record of cooperation with the police, as in cases where we have found that the confidential tip was reliable enough to confer probable cause. *See, e.g., United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000) (finding sufficient reliability where the affiant officer stated that he had worked with the informant for five years and the informant had provided reliable information in the past). Given the sliding-scale approach to analyzing the sufficiency of a tip, *Alabama v. White*, 496 U.S. 325, 330 (1990), this weak showing of reliability is insufficient to make up for the lack of any showing of the informant's basis of knowledge. Under the totality of the circumstances, the informant's tip cannot support a probable cause determination. *United States v. Helton*, 314 F.3d 812, 821–22 (6th Cir. 2003); *Higgins*, 557 F.3d at 390.

When a tip fails to sufficiently indicate its reliability or basis of knowledge, officers have to corroborate it. *United States v. Woosley*, 361 F.3d 924, 927 (6th Cir. 2004); *United States v. Howard*, 632 F. App'x 795, 804 (6th Cir. 2015) ("What an informant and her tip lack in intrinsic indicia of credibility, however, police must make up for in corroboration."). The affidavit states that detectives "conducted surveillance" at the residence and "observed Melvin Woodall leave the residence carrying a backpack." R. 63, Page ID #449. But this corroboration—if one can call it that—did little to verify the informant's tip that Woodall dealt drugs *inside the house*. To the contrary, the officer's corroboration undermined the veracity of the tip, in two distinct ways. First, officers observing a controlled buy at "specific location" that was not the Oldfield residence contradicts the claim that Woodall sold drugs from the house itself. *Id.* Second, officers observing Woodall carry a backpack to and from a pond, and inferring from that action that Woodall was storing illegal controlled substances in the pond "in order to conceal from law enforcement" also contradicts the informant's statement that Woodall stored drugs at the Oldfield residence. *Id.*

Thus, officers actively undermined the veracity of the informant's information, rendering its inclusion in the affidavit insufficient for probable cause.

Lastly, and perhaps most crucially, the affidavit contains no information or indication that Woodall lived at the place to be searched. As a result, and contrary to the majority's holding, law enforcement cannot rely on the dubious inference that "evidence is likely to be found where the dealers live." *United States v. Crawford,* 943 F.3d 297, 308 (6th Cir. 2019) (quotation omitted). The affidavit never established that Woodall was selling drugs out of his own home, or that that home was Oldfield Drive. Rather, it stated only that the CI reported that Woodall stored drugs at Oldfield Drive, and that officers observed Woodall leaving from and returning to Oldfield Drive on some occasions. R. 63, Page ID #449. Therefore, the government cannot rely on the questionable assertion that it need not establish the probable cause nexus when the place to be searched is the defendant's residence and the defendant is suspected of drug-dealing.

The majority misunderstands this crucial point by consistently assuming, without explanation, that the residence was Woodall's. To the contrary, the affidavit mentions only that an uncorroborated tip accused Woodall of storing drugs in the Oldfield Drive residence and that Woodall participated in one controlled buy at an undisclosed location, presumably away from the residence. The majority's reliance on cases where the defendant lived in the searched residence is therefore not just inapposite but misleading. Neither judges nor law enforcement can justify a search based on the inference that criminal evidence is found at the homes of drug dealers when no one ever alleged that this home belonged to a drug dealer. The magistrate judge could not reasonably conclude there was evidence of drug-dealing in the house. As discussed, there was no evidence in the affidavit that Woodall lived in the house on Oldfield Drive. And inferential leaps cannot suffice for the showing that the government is required, by the Fourth Amendment, to

make. *See United States v. Laughton*, 409 F.3d 744, 750 (6th Cir. 2005) (disfavoring "filling the gaps" in an affidavit by drawing "inferences"). If the magistrate judge could merely infer the very facts that probable cause requires, then the Fourth Amendment could be circumvented by judicial fiat.

The majority's response completely misses the point. It does not matter whether the record or Woodall's brief indicate that the house was his. What matters is whether the *affidavit* suggested that the house was his. The magistrate reads the affidavit, not property records or post-hoc briefing, to determine whether probable cause exists to search a place. *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996) ("In determining whether an affidavit is 'bare bones,' the reviewing court is concerned exclusively with the statements contained within the affidavit itself." (citation omitted)). Yet the majority today holds that there was a nexus between the house and criminal activity because of the dubious maxim that, once the police establish a suspect is a drug dealer, "drugs or other evidence of crime [will] be found in the suspect's home." Maj Op. at 4 (quoting *Reed*, 933 F.3d at 447). But if the affidavit did not suggest that the house was Woodall's—and it did not—then the magistrate judge had no basis to assume that evidence of criminal activity would be found there based only on the questionable assumption that officers can expect to find drugs where drug dealers live. The key piece of information necessary to employ that dubious maxim—that Woodall lived in the house—was absent from the affidavit.

The majority grasps at straws when it reaches for the warrant application's vague description of the house as "the premises . . . of . . . Melvin Woodall." Not only is this brief, unclear statement separate and apart from the activity officers detailed as sufficient for probable cause, but the word "premises" hardly proves that the police believed they were searching Woodall's home as opposed to a different building with some association to him. *Cf. Premises*,

Merriam Webster, https://www.merriam-webster.com/dictionary/premise (last visited June 26, 2024) (defining premises as "a tract of land with the buildings thereon"). In generously stretching the plain language of the warrant application, the majority blessed this search by assuming a key fact that the affidavit did not establish. But this Court cannot fill the numerous gaps that law enforcement left in the warrant—gaps that are incompatible with the Fourth Amendment probable cause requirement. *Helton*, 35 F.4th at 521 (disfavoring applying the good faith exception to situations that require filling gaps by "inferences drawn upon inferences"). If the mere mention that officers seek to search a "premises" associated with a suspect is sufficient to establish that the residence belonged to a suspect, and therefore sufficient to invoke the dubious maxim that "evidence is likely to be found where drug dealers live," then officers need only fill in the blanks of form affidavits, claim they have observed a single drug deal, without confirming that the suspect actually resides at the premises, and rest assured that this Court will uphold the search under the good-faith exception.

But even the good faith exception cannot salvage this affidavit. For the exception to apply, "the officer's reliance on the magistrate's probable-cause determination . . . must be objectively reasonable." *United States v. Leon*, 468 U.S. 897, 922 (1984). But some affidavits, like this one, are so deficient that a reasonable officer would not have relied on it. Those are called "bare bones" affidavits, and they "state[] only 'suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'" *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017) (quoting *Laughton*, 409 F.3d at 748).

This affidavit, because it lacks even the "minimally sufficient nexus" required by the good faith exception, meets this definition. The majority's arguments to the contrary are unavailing. The majority opinion states that "police corroborated the informant's tip that Woodall dealt drugs

and stored them at the house." Maj. Op. at 3. But, as discussed above, law enforcement did not verify the informant's tip that Woodall stored drugs *in the house*. Police observed only that Woodall carried a backpack from the residence to a nearby pond. And this observation led the affiant officer to invoke his experience "that drug traffickers store illegal controlled substances in fields, ponds, woods, in order to conceal from law enforcement." R. 63, Page ID #449. Thus the modicum of surveillance conducted by the police in this case did nothing to corroborate the tip that Woodall stored drugs in the house itself, as opposed to another area like the pond, meaning the police did not properly corroborate the informant's tip that sought to connect the residence to criminal activity. *Helton*, 314 F.3d at 824 ("[A]t a minimum, a reasonable officer would have sought to corroborate [the tip] further.")

In this case, the affidavit boils down to: (1) an uncorroborated tip that Woodall stored and sold drugs in his home without a statement as to the location of his home, (2) a controlled buy in an unspecified other location, and (3) officer surveillance of Woodall bringing a backpack to a local pond. A reasonable officer would not have found these discordant facts to constitute the "minimally-sufficient nexus" between criminal activity and the Oldfield residence. When we have applied the good faith exception to rescue deficient warrants in the past, those cases have involved far more of a connection between the criminal activity and the place to be searched. *See, e.g.,* *Higgins*, 557 F.3d at 385, 391 (applying the good faith exception to a search of defendant's home address where the informant told the officers that he had personally purchased drugs from the defendant at the defendant's address earlier the same day, and the tip was corroborated in multiple ways); *United States v. Washington*, 380 F.3d 236, 242–43 (6th Cir. 2004) (applying the good faith exception where the defendant's car was registered to the address of the house, and affiant described his training and experience and why that caused him to believe that evidence would be

found at the house); *cf. United States v. Savoca*, 761 F.2d 292, 297 (6th Cir. 1985) ("[A] suspect's mere presence or arrest at a residence is too insignificant a connection with that residence to establish that relationship necessary to a finding of probable cause." (internal quotation marks and citation omitted)). Because this case has even less indicia of probable cause than those cases, faithful application of this Court's precedent demands that this Court decline to apply the good faith exception and reverse the district court's denial of Woodall's motion to suppress.

The majority disagrees, largely based on its wrongful assumption that Woodall lived at Oldfield Drive and that law enforcement sufficiently demonstrated that fact in the affidavit. Again, the majority ignores that the affidavit failed to set forth this fact, but that is not the last of the majority's mistakes. The majority also errs in concluding that police observed sufficient drug activity on Woodall's part such that there was "reason to believe that drugs or other evidence of crime will be found in the suspect's home." Maj. Op. at 4 (citing *Reed*, 993 F.3d at 448–49). But law enforcement observed Woodall conduct one controlled buy, and did not even bother to detail where that controlled buy occurred. Our precedent has typically required evidence of continued, large-scale drug-trafficking, significantly more than just one drug transaction, to invoke the maxim that drugs are likely to be found where a drug dealer lives. *See, e.g., United States v. Sheckles*, 996 F.3d 330, 342 (6th Cir. 2021) ("When we have used a drug dealer's drug activities alone to find probable cause to search the dealer's home, the dealer was engaged in 'continual and ongoing operations' typically involving large amounts of drugs. . . . When, by contrast, we have found that drug distribution alone did not suffice, the police had evidence only of a single instance of drug possession or distribution." (internal quotation marks and citation omitted)); *United States v. Gunter*, 551 F.3d 472, 481 (6th Cir. 2009) (holding that the "quantity of drugs [in the one to four kilogram range] and the repeated nature of the transactions" made it "reasonable to infer" that

evidence of criminal activity would be found in the defendant's residence); *United States v. Goward*, 188 F. App'x 355, 359 (6th Cir. 2006) (affirming the denial of a motion to suppress where the defendant was involved in a "marijuana smuggling operation" and police conducted several controlled buys).

To hold, as the majority does today, that one drug deal, away from the house, is enough to search a suspect's alleged home further erodes the difference between probable cause to arrest someone for a crime and probable cause to search his home. But we have previously held, consistent with the Fourth Amendment's prohibition on general warrants based on mere suspicion, "it cannot follow simply from the existence of probable cause to believe a suspect guilty, that there is also probable cause to search his residence." *United States v. Savoca*, 761 F.2d 292, 297 (6th Cir. 1985) (cleaned up); *see also Chimel v. California*, 395 U.S. 752, 761 (1969) ("The Amendment was in large part a reaction to the general warrants and warrantless searches that had so alienated the colonists and had helped speed the movement for independence."). The majority eschews this precedent in favor of a new regime in which the police can apparently search the home of anyone suspected of engaging in even a modicum of drug-dealing activity—including just one buy away from the home—without any showing that that home is connected to a crime. Our case law, not to mention the Fourth Amendment, demands a different result that properly protects individuals from the disproportionate power of the state. And, most importantly, all of this analysis is inapplicable where, as in this case, the police failed to show that Woodall lived in the residence in question.

The Oldfield Drive residence should never have been searched based on this affidavit. As an appropriate remedy, the evidence from the search should have been suppressed. And because the government concedes that Woodall's statement to the police was not sufficiently attenuated

from his illegal search, I would also reverse the district court's denial of Woodall's motion to suppress as it applies to his confession. I therefore respectfully dissent.